Argued May 25, affirmed June 14, 1976

# KING, *Respondent,*
*v.*
# OREGON STEEL MILLS, INC., *Appellant.*
## (No. A-76-01-00534, CA 5955)

550 P2d 747

*Bernard F. Stea,* Portland, argued the cause for appellant. With him on the brief were Cosgrave & Kester, Portland.

*Keith E. Tichenor,* Portland, argued the cause for respondent. On the brief were Pozzi, Wilson & Atchison and Donald R. Wilson, Portland.

Before Schwab, Chief Judge, and Langtry and Lee, Judges.

LANGTRY, J.

# LANGTRY, J.

■ Oregon Steel Mills, Inc., employer, appeals from an order of the circuit court directing the Workmen's Compensation Board to accept claimant's application for benefits,[1] contending that claimant has failed to meet his burden of proving by a preponderance of evidence that his debilitating respiratory condition arose "out of and in the scope of" his employment.[2] Our review is de novo on the record forwarded by the Board.[3]

Between January 28, 1974 and July 1, 1974 claimant worked as a laborer in the "furnace area" of employer's steel producing plant. That claimant was exposed to considerable heat and required to breathe air contaminated with significant amounts of smoke and fumes in the course of carrying out his duties within the furnace area is uncontroverted. For some two months prior to July 1, 1974 claimant had been aware of an increasing respiratory problem, becoming short of breath more and more quickly and experiencing some congestion in his lungs.[4] After having been

---

[1] Affirming an order of its referee, the Workmen's Compensation Board had previously denied the claim, holding that the "equivocal and inconsistent" evidence introduced by claimant failed to "preponderate" in favor of compensability.

[2] "As used in ORS 656.802 to 656.824, 'occupational disease' means:

"(a) Any disease or infection which arises out of and in the scope of the employment, and to which an employe is not ordinarily subjected or exposed other than during a period of regular actual employment therein." ORS 656.802(1)(a).

For a discussion of the development of the "Occupational Disease Law"—ORS 656.802 through 656.824—and the distinctions to be drawn between claims for "diseases" as opposed to "injuries," see O'Neal v. Sisters of Providence, 22 Or App 9, 537 P2d 580 (1975).

[3] ORS 656.301, 656.298(6); Coday v. Willamette Tug & Barge, 250 Or 39, 440 P2d 224 (1968).

[4] While working as a laborer in the employer's "melt department," under conditions similar to those present in the furnace area, between October 1973 and January 1974, claimant had been treated for "cold-like" symptoms—shortness of breath and "wheezing"—diagnosed as a "viral illness" by a thoracic surgeon essentially unfamiliar with the extent to which claimant was being exposed to heat, smoke and fumes in the course of his employment.

[ 687 ]

absent from the job for one week, claimant consulted Dr. Adel Matar, a pulmonary specialist, on July 8, 1974. An examination conducted at that time indicated that claimant was suffering from a "mild constrictive and restrictive pulmonary disease" of unknown etiology.[5] Claimant thereafter filed his compensation claim on July 17, 1974, alleging that his condition was attributable to "[e]xcessive smoke and irritants around furnace."

In response to an inquiry by claimant's attorney Dr. Matar expressed the view in a letter dated February 3, 1975 that:

"* * * [Claimant's] initial inability to work was probably contributed to by the work environment. The medical care and treatment provided for [claimant] in July [1974] was necessary because of a condition which was probably contributed to by the work environment at his place of employment in the months prior to July 1974."[6]

---

[5] A bronchoscopy produced no evidence of tumor or mucosal disease, but bronchial washings did reveal the presence of atypical cells. A skin test performed shortly after the initial examination indicated that claimant neither had active tuberculosis nor was in the process of developing that particular disease.

[6] Dr. Matar had originally mailed a letter indicating that claimant's "initial inability to work *may have been* contributed to by the work environment. The medical care and treatment provided for [claimant] in July was necessary because of a condition which was *probably* contributed to by the work environment at his place of employment in the months prior to July 1974." (Emphasis supplied.) Upon receipt of that letter claimant's attorney had contacted Dr. Matar in order to point out the apparent inconsistency between the conclusion that the claimant's inability to work "may have been contributed to by his work environment," and the conclusion that the same environment had "probably" contributed to the condition which necessitated treatment. Responding to questioning by employer's counsel at the time his deposition was taken on July 10, 1975, Dr. Matar testified that he had not realized the different legal effects of the two phrases employed in his first draft, and that what he had actually meant—and what he specifically stated in his revised edition of the letter—was that:

"* * * [B]oth [the inability to work and the treatment provided] are probably related to his work environment * * *. The two conditions go together.

"* * * * *

"I wrote [the second letter] with the same date as the previous [letter] with the correction of exactly what I meant at the time I wrote the initial letter."

Testifying below by means of deposition Dr. Matar expanded upon the opinion expressed in his letter of February 3 by explaining the basis for that opinion:

"The fact that he had a definite pathological change as shown by the sputum cytology at [the time of the initial examination on July 8, 1974] * * * which could not be accounted for by his smoking habit. * * * [B]y exclusion, the only possible reason left was the pollution, atmospheric pollution in his work environment, plus the sudden changes in temperature which is known to be damaging to the mucus membrane of the bronchial tree."

Neither party introduced any other relevant medical evidence at the hearing.

Tending to support Dr. Matar's conclusion that claimant's condition was causally related to his work environment were the results of a sputum examination and pulmonary function tests carried out in December of 1974—some six months after claimant had removed himself from the work environment—indicating claimant's condition at that time to be "within normal limits." Claimant specifically testified that his condition had improved substantially since leaving the work environment.

■ Taken as a whole, the weight of this evidence leads us to conclude that there was, in fact, a causal relationship between claimant's work environment and the condition upon which his application for benefits was based; claimant has established by a preponderance of the evidence that his respiratory ailment was an "occupational disease" within the parameters of ORS 656.802. *See Mathis v. SAIF,* 10 Or App 139, 499 P2d 1331 (1972).

Affirmed.