# IVERSON, *Appellant,*
### *v.*
# STATE ACCIDENT INSURANCE FUND,
### *Respondent.*
## (No. A76-05-07136, CA 6835)
561 P2d 651

William B. Reisbick, Milwaukie, argued the cause and filed the brief for appellant.

Melinda L. Bruce, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Lee, Judges.

LEE, J.

Thornton, J., dissenting opinion.

**LEE, J.**

The determinative issue in this workmen's compensation case is that of causation. The referee, Workmen's Compensation Board and circuit court each found that claimant had not established by a preponderance of evidence that his debilitating condition—rheumatoid spondylitis—had "arise[n] out of and in the scope of [his] employment," i.e., that his employment had either caused or aggravated the condition in any material way,[1] and accordingly denied his claim for compensation benefits. Claimant appeals, contending that his employment, involving relatively strenuous labor, did in fact aggravate if not cause his disabling condition and that he is, therefore, suffering from a compensable "occupational disease."[2]

1. As in most cases in which the onset of a disease is not marked by any single occurrence—cases in which an employe seeks to establish that his employment has subtly caused or aggravated the progression of a disease over an extended period of time—the issue of causation with which we are faced in the case at hand can only be resolved by the consideration and weighing of expert medical opinions.[3]

At the hearing before the referee Dr. Robert E.

---

[1] *Beaudry v. Winchester Plywood Co.,* 255 Or 503, 469 P2d 25 (1970); *King v. Oregon Steel Mills,* 25 Or App 685, 550 P2d 747 (1976); *Geenty v. Hyster,* 23 Or App 146, 541 P2d 486 (1975).

[2]
    "(1) As used in ORS 656.802 to 656.824, 'occupational disease' means:

    "(a) Any disease or infection which arises out of and in the scope of the employment, and to which an employe is not ordinarily subjected or exposed other than during a period of regular actual employment therein." ORS 656.802(1) (a).

*See generally O'Neal v. Sisters of Providence,* 22 Or App 9, 537 P2d 580 (1975).

[3] *Uris v. Compensation Department,* 247 Or 420, 427 P2d 753, 430 P2d 861 (1967); *Barry v. Bank of California,* 25 Or App 269, 548 P2d 997, Sup Ct *review denied* (1976); *Williams v. SAIF,* 22 Or App 350, 539 P2d 162 (1975); *Trudeau v. Weyerhaeuser Co.,* 17 Or App 30, 520 P2d 472 (1974); *Volk v. Birdseye Division,* 16 Or App 349, 518 P2d 672, Sup Ct *review denied* (1974).

Rinehart, a physician who began treating claimant in February of 1974, some eight months after he had left his employment, conceded that an individual routinely engaged in activities involving physical exertion is no more likely to be afflicted with rheumatoid spondylitis—a progressive disease involving the fusion of the bones of the pelvis or spine—than an individual leading a substantially sedentary life. In Dr. Rinehart's opinion, however, the disease is "always aggravated by muscular exertion"; consistent with that view Dr. Rinehart offered the opinion that claimant's employment as a refrigeration mechanic, involving as it did the lifting and carrying of heavy objects, had in fact "aggravated" his condition to the point of rendering him incapable of further employment. That opinion was, however, contradicted by both Dr. Edward E. Rosenbaum, who examined claimant in August of 1974, and Dr. James A. Mason, who conducted a complete "workup" of claimant pursuant to the directions of the Board on November 6, 1975.

Based on a "classic history" consisting of "a kypho scoliosis of the back, marked limitation of motion of the back, and marked hyperreflexia * * *," objective findings obtained by means of his own examination of the claimant, and "confirmatory" x-rays, Dr. Rosenbaum also diagnosed claimant's condition as rheumatoid spondylitis. Dr. Rosenbaum went on to note that

"[t]here is in the [claimant's] history an eight year history of recurrent episodes of back pain and there is X-ray evidence that this man had rheumatoid spondylitis as far back as February 24, 1969 * * *.

"Rheumatoid spondylitis is an illness and there is no scientific basis on which to relate it to an accident.

"In this man's case there is not even a specific accident which can be related as an aggravating or precipitating factor.

"In view of the fact that this man has an illness and that the progression of his illness is quite characteristic of the illness and is what one frequently sees in patients who are sedentary and not employed, I cannot relate his

illness to his occupation * * * I do not feel that it is reasonable to claim that his occupation has aggravated his illness and caused his present condition."

Concurring in the diagnoses of claimant's condition provided by Drs. Rinehart and Rosenbaum, Dr. Mason offered the following opinion on the question of whether that condition had been aggravated by his work activities:

"* * * I think Dr. Rinehart stands pretty much alone in stating that activities at work have aggravated the progession of his rheumatoid spondylitis. I believe the general consensus of medical opinion is the reverse of this stand; namely, that the natural progession of this disease would produce increasing degree of painful symptoms and increasing limitations of motion which have caused his increasing disability to do work. I believe most of us medical men agree with Dr. Rosenbaum's statement that we see this disease progressing in the same manner in people who are sedentary and not working and not being exposed to work stresses. Every patient is a rule unto himself as to how fast the disease progresses and at what stage of ankylosis it stops; however, in general these patients are advised to be as active as their pain permits to avoid the muscle stiffness and loss of motion that otherwise would result in the joints not affected by this disease * * *."

■ As we see it, the expert medical evidence preponderates against a finding that the progressive deterioration of claimant's condition was either caused or aggravated by the physical exertion attendant with his work as a refrigeration mechanic; accordingly, we find, as did the referee, Board and circuit court, that claimant has failed to establish that his disabling condition arose out of and in the scope of his employment.

Affirmed.

**THORNTON, J.,** dissenting.

Contrary to the conclusion of the majority, I am persuaded by the testimony of claimant's treating physician that claimant's strenuous work activity and

exposure to cold temperatures while working in refrigerator trucks aggravated the degenerative changes which were taking place in claimant's body and increased the amount of symptoms from which claimant is now suffering.

Neither party was contending that claimant's work had *caused* his rheumatoid spondylitis condition. There was contradictory medical testimony as to whether claimant's condition was aggravated by the heavy lifting and exposure to cold temperatures in the course of his employment. I believe we should resolve this conflict in the expert testimony in favor of the claimant. I would allow this claim on the authority of *Beaudry v. Winchester Plywood Co.,* 255 Or 503, 469 P2d 25 (1970), where our Supreme Court held that a claimant who suffered aggravation of his preexisting bursitis as a result of his having to stand on a vibrating platform during the course of his employment, suffered from a compensable occupational disease. *See also, Barackman v. General Telephone,* 25 Or App 293, 298, 548 P2d 1341 (1976).