477 P.2d 568

Calvin K. WOOD, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

The Travelers Insurance Company, Respondent Insurance Carrier,

The Anaconda Company, Respondent Employer.

No. 1 CA–IC 388.

Court of Appeals of Arizona, Division 1, Department A.

Dec. 8, 1970.

Strickland, Altaffer, Davis & Eppstein by Robert W. Eppstein, Tucson, for petitioner.

Spaid, Fish, Briney & Duffield by Michael C. Young, Tucson, for respondent insurance carrier and respondent employer.

Donald L. Cross, Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

CAMERON, Chief Judge.

This is a writ of certiorari to review the lawfulness of an award and finding of the Industrial Commission of Arizona which found that the petitioner had not been disabled for work in excess of seven days as a result of an industrial injury and was therefore not entitled to temporary disability compensation.[1]

We are called upon to determine:

1. When because of the failure of the company doctor to release the petitioner for work he is unable to return to his previous employment, is he therefore considered disabled, and

2. was the award of April 1969 valid and res judicata as to the petitioner?

The facts necessary for determination of this matter are as follows. The petitioner suffered a compensable back injury on 27 July 1967. The following day he wanted to return to work and telephoned his employer to see what he was supposed to do to return. He was told to get a doctor's release; he went to a doctor at Davis Monthan Air Force Base, got a prescription, took it, "felt great", and got a release from that doctor to return to work. He was told he had a pulled muscle.

The next day he returned ready for work; he was told by his supervisor that he would have to get a release from the company doctor before he could return to work. The company doctor was Dr. Garland; he was used on industrial accidents at the insistence of the employer. The doctor was contacted by the supervisor and asked to examine petitioner and see if he was able to return to work.

Dr. Garland did examine petitioner and suspected a ruptured disc. He therefore refused to certify petitioner as able to return to work. Dr. Garland, admitting he was "not an authority on discs," referred the petitioner to Dr. Tanz, an orthopedic specialist. Dr. Tanz examined the petitioner and told him he probably did not have a disc problem. Dr. Tanz gave the petitioner a full release to return to work. The petitioner took this release to his foreman, worked one day, and was then told his release from Dr. Tanz was not sufficient, that he would have to obtain a release from Dr. Garland. Petitioner returned to Dr. Garland who told him he would not give him a release to work.

Dr. Garland had originally told petitioner he could return to work if he had a myelogram, if it turned out negative. Dr. Tanz,

---

1. This case was decided under the law as it existed prior to 1 January 1969.

the orthopedic specialist, said no myelogram should be given. A myelogram is:

"An x-ray picture of the spinal cord, especially one made after the injection of a contrast substance in the spine. * * *."

Attorneys' Dictionary of Medicine, Schmidt.

Left in this medical hiatus, the petitioner secured employment with the Circle K chain at a significantly reduced rate of pay.

A findings and award for non-compensable claim was filed 29 April 1968 which found:

"That there is insufficient medical evidence to support said claim for injury."

Petitioner represented by his counsel filed a petition for hearing which was held on 22 January 1969.

An award was made on 23 April 1969 by the Commission for a compensable claim finding no disability in excess of 7 days. The award was mailed to the petitioner at a former address, a current address being readily available to the Commission in its file. The award was not mailed to the petitioner's attorney, although he was attorney of record and had been as early as 2 February 1968.

## WAS THE PETITIONER DISABLED?

At the hearing held 22 January 1969, the safety supervisor of the respondent company testified concerning the accident and the testimony in this regard as well as that of the petitioner who also testified is in conflict. Concerning the request for a myelogram, Dr. Garland testified as follows:

"A  Yes, on the first of August I think I saw him because he brought in a release. I had originally advised him to have a myelogram done. X-rays in themselves showed the spot where the disc is, but not the disc. And it was on the first of August that he brought in a release from Dr. Tanz, and I certainly am aware that Dr.

Tanz is an excellent orthopedic man, but I felt that he'd been snowed in this deal, and I refused to permit him to go back to work merely because he'd had a release from Dr. Tanz.

"I had originally told him I would return him to work if he'd have a myelogram, and it was negative".

Dr. Garland was asked:

"Q  Are you as a doctor who examined Anaconda men—well, do you ever examine prior to their coming to work at Anaconda?

"A  We always examine.

"Q  You personally often do?

"A  Yes, Dr. Orozco and I examine all of the employees.

"Q  Do you attempt to weed out those that have disc problems?·

"A  We attempt to weed out or at least advise Anaconda of those backs which might well become industrial problems.

"Q  Does that include discs?

"A  Well, I think in some of the things we have these men do at examination we would attempt to find out whether he has normal felexion of his spine, that he can squat normally without pain, that his reflexes are intact."

*   *   *   *   *   *

"Q  Do you know of any records of the company that would indicate any examinations of Calvin Wood up to the time he came to you that showed a disc problem?

"A  He probably was hired twice and this is why we have two sets of X-rays on him. This examination would have been done by Dr. Brilhart at about the time that these X-rays were dated.

"Q  Who would have the record of those?

"A Anaconda would have the only records of those."

**452**

The petitioner testified that he was injured on the day in question while working on the top of a large truck and had to be helped down from the truck by way of a forklift. The petitioner, discussing his conversation with Dr. Garland, stated:

"A * * * He told me just what I had said previously, that regardless of what was done he could not give me a release to go back to work. He said if Dr. Tanz felt that a myelogram was necessary, he says then he felt also that it would be necessary. But he said even if the myelogram proved negative there was no way that he could assure me that he would be allowed to give me a release to return to work.

\* \* \* \* \* \*

"Q Then you worked, I guess, until the end of July of 1967 at Anaconda, is that right?

"A I worked only one day after the accident. I worked the day of the accident; the following day I phoned the mines, I asked what would I have to do to return to work. They told me, 'You'll have to see a doctor.'

"I made an appointment for the following day, after which I seen Dr. Garland. Dr. Garland referred me to Dr. Tanz. I immediately went to Dr. Tanz's office, Dr. Tanz gave me a complete written release.

\* \* \* \* \* \*

"Q When did you go to Circle K? How many days after that?

"A Like I say, it would have to be almost a good month before I finally went to work for Circle K. I hashed around with them so long, I tried every possible way that I could to get back. I even got to the point of I packed a lunch and I got dressed and I drove out to work. And it was the day I was supposed to have started the swing shift. I walked in the front office and I said, 'Here I am, I'm ready to go to work, there's nothing wrong with me, I've gotten a doctor's release which you've asked for; I'm here, I want to go to work,' and I was turned away again.

\* \* \* \* \* \*

"Q Would there have been a period of time there when you weren't going to make a claim and then you didn't get your job back and you decided to make a claim? Is that what happened?

"A This is what was told to me, if I may explain, at the front office. It was explained to me, they said, 'Your insurance policy that you are paying for right now, they say they won't do anything for you because they feel that it is an occurrence of something that happened to you while in the military service.'

"I said, 'Well, how about industrial then?' I said, 'If there's something wrong I'd like to get it taken care of, I want to come back to work.'

"They said, 'Industrial also has said they will not touch you, because they feel it is something that happened to you while on active military service'."

As a result of the hearing and the referee's report, the Commission, on 23 April 1969, issued its decision upon hearing findings and award for compensable claim finding:

"1. That the claimant sustained a back injury by accident arising out of and in the course of his employment on July 27, 1967.

\* \* \* \* \* \*

"3. That the claimant was not disabled for work in excess of seven days as a result of said injury and is not entitled to temporary disability compensation therefor."

We believe that the record amply supports the determination by the Commission that the claimant did sustain an industrially related injury on 27 July 1967. We are not, however, persuaded under the fact situation, that the claimant was not disabled for

work in excess of 7 days. We do not believe the refusal of the petitioner to take a myelogram was unreasonable in light of the fact that the orthopedic specialist, Dr. Tanz, did not advise or suggest that he take one. We do believe that the fact that the company doctor refused to release the petitioner for work raises at least some presumption that as a result of the injury the petitioner has some disability and that the Commission's finding in this regard is not reasonably supported by the evidence.

## WAS THE AWARD OF APRIL 1969 RES JUDICATA?

Respondents contend in their brief that this award of April 1969 became final and is res judicata binding the Commission. The file reflects that the award was mailed to petitioner at an old address though not the address at the time of the mailing, and that the attorney of record was not served. The affidavit of the attorney in support of the petition for hearing of 4 November 1969 that he first learned of the award on 24 October 1969 supports this lack of service on the attorney.

Respondent, Anaconda Company, in the response to the petition for hearing alleged that the matter had become res judicata by the failure of the petitioner to file the matter within 20 days after the award. This is reurged on appeal.

We have previously stated in this Court that where there is an attorney of record and the attorney is not served, that the award does not become final until this is done. It is immaterial therefore that the petitioner's correct address was known or not although the file would indicate that it was known. There being an attorney in the case, service upon the attorney is necessary before service could be complete:

"* * * It is the opinion of the Court that service upon the claimant who had previously given written authorization for service to be made upon her attorney, who was an attorney of record, was not valid service. Therefore, the

time for filing a protest or petition for rehearing did not start to run until service was made upon the attorney. The Commission was correct in ordering the referee to make the decision upon the merits." Sill v. Industrial Commission, 12 Ariz.App. 6, 467 P.2d 81, 83 (1970). See also Land v. Industrial Commission, 12 Ariz.App. 298, 469 P.2d 864 (1970).

The award is set aside.

DONOFRIO, P. J., and STEVENS, J., concur.