Percy G. McSPADDEN, Appellant,

v.

BIG BEN COAL COMPANY, Old Republic Insurance Company, and Iowa Industrial Commissioner, Appellees.

No. 63537.

Supreme Court of Iowa.

Jan. 23, 1980.

John A. Jarvis, Chariton, for appellant.

Merlin A. Steger of Adler, Brennan, Joyce & Steger, Des Moines, for appellees Big Ben Coal Company and Old Republic Insurance Company.

Considered by REYNOLDSON, C. J., and LeGRAND, McCORMICK, ALLBEE, and LARSON, JJ.

ALLBEE, Justice.

Percy G. McSpadden appeals the judgment of the district court, affirming the denial by the industrial commissioner of workers' compensation benefits. He claims to have suffered deleterious effects from inhaling coal dust and toxic gases while working underground in coal mines for many years.

On May 26, 1977, McSpadden filed his petition for arbitration with the industrial commissioner, claiming permanent and total disability against Big Ben Coal Co., his most recent employer in the coal mining industry, and Old Republic Insurance Co., Big Ben's carrier. A hearing on the petition was held September 22, 1977, before a deputy industrial commissioner, who subsequently denied the requested benefits. Claimant then appealed the proposed decision of the deputy to the industrial commissioner. Concluding that the deputy's findings of fact and conclusions of law were proper, the commissioner adopted the proposed decision as the final decision of the agency. Claimant next petitioned for judicial review, and

the district court affirmed the commissioner's decision.

I. *Preservation of Error.*

■ In this appeal from the district court's judgment, claimant generally alleges in his brief that the agency violated constitutional, statutory and agency rule provisions and acted unlawfully, unreasonably, arbitrarily and with an abuse of discretion. These are some of the recognized statutory criteria to which review of administrative action is restricted. *Schmitt v. Iowa Department of Social Services,* 263 N.W.2d 739, 743 (Iowa 1978); § 17A.19(8), The Code (made applicable to workers' compensation cases by § 86.26, The Code 1977 (as amended by 1977 Session, 67th G.A., ch. 51, § 51)). However, claimant's brief, after stating this general allegation, proceeds only to list certain enumerated acts or omissions of the lower tribunals, which he alleges all reflect the violations previously generally alleged. In the ensuing discussions of each of these enumerated points, he fails to mention or give supportive authority for some of the violations generally alleged as related to the particular act or omission. Insofar as claimant neglected to relate particular agency acts or omissions to specifically described violations, supported by legal authorities, his argument is so indefinite as to preclude our consideration. *See Arthur Elevator Co. v. Grove,* 236 N.W.2d 383, 393 (Iowa 1975); Iowa R.App.P. 14(a)(3) ("Failure in the brief to state, to argue or to cite authority in support of an issue may be deemed waiver of that issue."). The most glaring instance of this deficiency is that only in one instance in his brief does claimant specify a constitutional provision which allegedly was violated. *See Chicago Title Insurance Co. v. Huff,* 256 N.W.2d 17, 21 (Iowa 1977) ("[A] constitutional challenge must specify the provisions invoked and state with particularity the details of any claimed transgression.") (quoting *Buda v. Fulton,* 261 Iowa 981, 989, 157 N.W.2d 336, 341 (1968)).

■ Additionally, in workers' compensation cases appellate review is limited to those matters raised and litigated before the commissioner, *Polson v. Meredith Publishing Co.,* 213 N.W.2d 520, 523 (Iowa 1973), and we shall so confine our review in this case.

II. *Adequacy of Administrative Findings.*

Several of the particular acts or omissions of the agency that claimant attacks involve the findings of fact and conclusions of law made by the deputy and later adopted by the commissioner. Consequently, a brief summary of the contents of the deputy's ruling is necessary. First, the deputy summarized claimant's work history and physical complaints from his testimony given at the hearing. Specifically, the deputy noted that claimant had worked underground in coal mines in various capacities from ages thirteen to sixty-seven and that he now claimed to be unable to breathe with any exertion or to perform the duties of his former job.

The deputy then quoted parts of the medical evidence. Included was a report of W. K. C. Morgan, M.D., Chief of the Appalachian Laboratory for Occupational Respiratory Diseases, stating that claimant's 1971 x-ray revealed "evidence of some early dust retention in the lungs, category 1 simple pneumoconiosis. . . ." The ruling also contained a report by Ralph E. Hines, M.D., a radiologist, which said that there was no evidence of pneumoconiosis in claimant's x-ray of 1975.

A report by D. A. Mater, M.D., who has been claimant's family physician for many years, was quoted as well:

[X]-ray and Ventilatory Studies, show that the pulmonary disease has progressed to the point where he can no longer perform physical exertion or tolerate the fatigue involved in his job at the mine.

Skeletal damage from prior injuries had stabilized prior to 1977. The lung condition worsened during the past seven years. This in turn, tends to overtax his heart, which requires that he avoid conditions of stress or lifting, and that he take frequent rest periods. I regard this condition as chronic and irreversible.

The deputy observed that Dr. Mater related his findings to claimant's exposure to coal dust and gases.

Finally, the ruling reiterated excerpts from a deposition of Randall R. Hanson, M.D., a specialist in internal medicine and pulmonary disease:

> It appears that Mr. McSpadden has mild to moderate obstructive airways disease, which is primarily a combination of chronic bronchitis and intrinsic asthma, with a significant amount of reversibility, as demonstrated by the pulmonary function tests. Mr. McSpadden has a history of significant coal dust exposure, but my interpretation was not radiographically evidence that he had coal worker's pneumoconiosis and that his functional capacity would fall into that of mild disability as far as his total cardiopulmonary function is concerned, depending on what one defined as disability for a sixty-seven year old male.

The ruling also quoted Dr. Hanson's description of claimant's ability to work:

> How much strenuous work are you asking? Are you asking that: Is this man able to do the physical work that a twenty-five [sic] year old man should do or can do? My answer to that is no. Is this gentleman able to do the same amount of work that an average sixty-seven year old man should do? I would say yes.

Next, the deputy set out applicable principles of law with case authority. He stated that claimant had the burden of proving by a preponderance of the evidence that his health impairment resulted from an incident or activity of employment. Determining causal connection is "essentially within the domain of expert medical testimony," he explained, citing *Bradshaw v. Iowa Methodist Hospital,* 251 Iowa 375, 101 N.W.2d 167 (1960). Finally, he set forth the broad definition of "personal injury" under chapter 85, articulated in *Almquist v. Shenandoah Nurseries, Inc.,* 218 Iowa 724, 732, 254 N.W. 35, 39 (1934) ("something, whether an accident or not, that acts extraneously to the natural processes of nature, and thereby impairs the health").

The deputy's ruling continued as follows:

## ANALYSIS

Claimant failed to sustain his burden of proof of an occupational disease under Chapter 85A which arose out of and in the course of his employment for defendant employer. The opinion of Dr. Hanson that claimant did not have coal worker's pneumoconiosis was given greater weight than the opinion of Dr. Mater due to the expertise of Dr. Hanson.

Dr. Hanson's opinion that a part of claimant's chronic bronchitis and asthma was probably related to the inhalation of coal dust by claimant could be construed to be an injury within the definition stated in *Almquist,* supra. However, claimant failed to prove that he was disabled from work as a result of this injury. Dr. Hanson described claimant's disability to be ". . . . a mild degree of disability." He believed claimant could perform the same amount of work as an average sixty-seven year old and could perform the work of an underground supervisor. Additionally, the medical evidence failed to specifically relate the chronic bronchitis and asthma of claimant or an aggravation of these conditions to the exposure of claimant to coal dust while working for defendant employer immediately preceding the injury date of April 26, 1977.

## FINDINGS

WHEREFORE, it is found that claimant failed to sustain his burden of proof of an injury or occupational disease arising out of and in the course of his employment for defendant employer.

THEREFORE, the relief requested in claimant's petition for arbitration is denied.

Claimant argues that the deputy's findings of fact and conclusions of law were deficient for lack of specificity and comprehensiveness and for the application of erroneous principles of law.

■ It is well established that the application of erroneous legal principles man-

dates reversal. *See, e. g., Langford v. Kellar Excavating & Grading, Inc.*, 191 N.W.2d 667, 668, 670 (Iowa 1971); *cf. Nelson v. Cities Service Oil Co.*, 259 Iowa 1209, 1214, 146 N.W.2d 261, 264 (1967) (reversal not required if commissioner misstates rule of law but actually determines case under correct rule). Remand is also necessitated in order to permit the agency to re-evaluate the evidence, applying the correct rule of law, unless the reviewing court can make the necessary factual findings as a matter of law because the relevant evidence is both uncontradicted and reasonable minds could not draw different inferences from it. *Compare Flint v. City of Eldon*, 191 Iowa 845, 849–50, 183 N.W. 344, 346 (1921), *with Langford.* The rationale for this principle is that if the reviewing court proceeded to re-evaluate the contradictory evidence, applying what it deemed to be the correct rule of law, it would be usurping the agency's function of making factual findings. *Flint*, 191 Iowa at 850, 183 N.W. at 346; *see SEC v. Chenery Corp.*, 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626, 636 (1943); 2 K. Davis, *Administrative Law Treatise* § 16.05, at 445–46, § 16.12, at 480–83 (1958).

■ Remand is also required if the commissioner has rejected or disregarded material evidence without any stated reasons. *McDowell v. Town of Clarksville*, 241 N.W.2d 904, 908–09 (Iowa 1976); *Catalfo v. Firestone Tire & Rubber Co.*, 213 N.W.2d 506, 510 (Iowa 1973). According to *Catalfo*, the deputy has the duty "to state the evidence he relies upon and specify in detail the reasons for his conclusions." *Id.* at 510; *see* § 17A.16, The Code. A principal reason for this requirement of specificity in agency findings is to facilitate judicial review. To be able to review an agency decision, a court must know what it means. *Id.*; 2 K. Davis, *supra* § 16.12, at 477–83.

Finally, if the ruling reveals that the commissioner rejected uncontroverted evidence either for reasons unassigned or through the application of an erroneous principle of law, this court has decided that both reversal and remand are necessary. *See Sondag v. Ferris Hardware*, 220 N.W.2d 903, 908 (Iowa 1974). It is this precise situation which exists in this case.

A. *Finding that Claimant Failed to Prove Pneumoconiosis.* Claimant asserts that the deputy's ruling was inadequate because it failed to make findings and conclusions rejecting or discounting claimant's proof of pneumoconiosis. As previously indicated, the deputy did include summaries of the medical evidence which was both favorable and unfavorable to claimant's claim. He also stated his reason for rejecting possibly the most favorable evidence, that of Dr. Mater, when he admitted according greater credence to the diagnosis of Dr. Hanson because of his expertise. As it appears that Dr. Hanson was the only board certified pulmonary medicine specialist whose report or testimony was received into evidence, it is reasonable to assume that the same reason explained the deputy's rejecting other evidence favorable to claimant and contradictory to Dr. Hanson's opinion. This case is clearly distinguishable from *McDowell v. Town of Clarksville*, 241 N.W.2d 904, 908–09 (Iowa 1976), and *Catalfo v. Firestone Tire & Rubber Co.*, 213 N.W.2d 506 (Iowa 1973), in which no reasons for rejecting certain evidence were stated in the agency ruling. We find no merit in this contention of claimant.

Nor do we agree with his argument that the deputy erred in giving controlling weight to Dr. Hanson's diagnosis of claimant's disease. We defer to the trier of fact in determining the weight to be given conflicting opinion testimony. *E. g., Farmers Elevator Co. v. Manning*, 286 N.W.2d 175, 176 (Iowa 1979); *Barz v. Oler*, 257 Iowa 508, 512, 133 N.W.2d 704, 706 (1965).

■ Additionally, claimant asserts that Dr. Hanson's testimony should not have even been admitted into evidence because it lacked proper foundation. The foundation objection was not raised, however, in a timely fashion. At the time Dr. Hanson's deposition was taken, claimant's counsel refused to make the common stipulation reserving certain types of objections until after the deposition has been completed. Nonetheless, counsel failed to make any

objections whatsoever during Dr. Hanson's examination, as was necessary when he failed to stipulate. *See generally* Iowa R.Civ.P. 148(a) (made applicable to workers' compensation proceedings by 500 I.A.C. 4.35). Nor did he make any objection grounded upon lack of proper foundation before the deposition was offered into evidence to the deputy. As such, he afforded no opportunity to his adversary to remedy the alleged defect, and his argument concerning the admission of the testimony was not preserved. *See Webb v. Iowa-Nebraska Coal Co.*, 198 Iowa 776, 779–83, 200 N.W. 225, 226–28 (1924); 500 I.A.C. 4.28 (The record is closed as of the time it is submitted to the deputy commissioner, except in unusual circumstances.).

■ Because we uphold the deputy's finding that claimant does not have pneumoconiosis, we also reject claimant's argument that the deputy's ruling is erroneous for failing to apply the statutory provisions regarding pneumoconiosis, given in section 85A.13 of The Code. That section provides, in part:

1. **Pneumoconiosis defined.** Whenever used in this chapter, "pneumoconiosis" shall mean the characteristic fibrotic condition of the lungs caused by the inhalation of dust particles.

2. **Presumptions.** In the absence of conclusive evidence in favor of the claim, disability or death from pneumoconiosis shall be presumed not to be due to the nature of any occupation within the provisions of this chapter unless during the ten years immediately preceding the disablement of the employee who has been exposed to the inhalation of dust particles over a period of not less than five years, two years of which shall have been in employment in this state.

Specifically, claimant's argument appears to be that because even Dr. Hanson found

some fibrosis in the area of claimant's lungs and related claimant's respiratory problems to the inhalation of coal dust and the deputy adopted Dr. Hanson's findings, section 85A.13(1) mandates that claimant be found to be suffering from pneumoconiosis.

However, these findings alone do not match the statutory definition of pneumoconiosis. First, the statute requires a "fibrotic condition of the lungs" that is "characteristic" of pneumoconiosis, not merely any type of fibrosis in the lung area. As Dr. Hanson explained, numerous diseases can result in fibrosis in the lung area. Unfortunately, our statute fails to delineate the characteristics indicative of pneumoconiosis.[1] Consequently, it is left to the deputy industrial commissioner or industrial commissioner reviewing the medical evidence presented to determine the particular characteristics of pneumoconiosis which must be present to justify a finding of the disease.[2]

Here, the deputy adopted the opinion of Dr. Hanson, including his views regarding the essential characteristics of pneumoconiosis. The observable criteria he gave for coal worker's pneumoconiosis were "radiographic evidence not attributable to other disease that's compatible with what's felt to be coal worker's pneumoconiosis, be it small irregular densities progressing to what we call progressive massive fibrosis, which are large conglomerate masses seen on the chest x-ray, which result in pulmonary disability. . . ."

In interpreting claimant's chest x-rays dated from 1969 to 1977, Dr. Hanson stated that he found no specific evidence for the presence of pneumoconiosis. Although he did observe fibrosis located in the pleura, or lining between the lung and chest wall, he also noted that "pleural fibrosis is not a particular major component to the process and the radiographic appearance [of coal worker's pneumoconiosis]."

1. *Cf.* 20 C.F.R. § 410(D) (establishing detailed standards for determining whether a coal miner is totally disabled from pneumoconiosis and thus eligible for black lung benefits under the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. §§ 801–960 (1976)).

2. Section 85A.21 of The Code permits the industrial commissioner to refer controversial medical questions to a medical board for its investigation and report. Such procedure may also prove useful in filling in this gap in the statutory definition of pneumoconiosis.

Moreover, the statutory definition imposes another requirement which was not met here: the fibrotic lung condition must be "caused by the inhalation of dust particles." Dr. Hanson specifically denied that claimant's pleural fibrosis was in any way due to or related to the inhalation of dust particles. Instead, he attributed claimant's pleural fibrosis to chest trauma which claimant sustained in 1969.

Claimant also asserts that the deputy's ruling incorrectly ignored the presumption stated in section 85A.13(2). According to his argument, a presumption of compensable pneumoconiosis applies whenever the claimant has been exposed to dust particles for the length of time specified in that provision. Because claimant was exposed to the inhalation of dust particles for at least five of the ten years preceding his alleged disablement and at least two of those years of exposure were spent in employment in this state, he contends that a presumption should apply to his case.

Again, claimant misinterprets the statutory provision. The propose of the presumption in section 85A.13(2) is to establish a causal link between the disease and the employment, not to establish the disease in the first place. Moreover, this particular presumption can only serve to aid defendants' cases, not claimants' cases. This construction of section 85A.13(2) is supported by the application of various rules of statutory construction.

One of those rules is that a statute should be accorded a logical, sensible construction which gives harmonious meaning to related sections and accomplishes the legislative purpose. See In re Estate of Bliven, 236 N.W.2d 366, 367 (Iowa 1975); Olson v. District Court, 243 Iowa 1211, 1214, 55 N.W.2d 339, 340 (1952).

The primary purpose of the workers' compensation statute is to benefit the worker and his or her dependents, insofar as statutory requirements permit. Cedar Rapids Community School v. Cady, 278 N.W.2d 298, 299 (Iowa 1979); see Wetzel v. Wilson, 276 N.W.2d 410, 411–12 (Iowa 1979); Hoenig v. Mason & Hanger, Inc., 162 N.W.2d 188, 190 (Iowa 1968). One of the requirements for qualifying for workers' compensation benefits under chapter 85 is that the claimant must prove that his injury occurred in the course of employment and also arose out of employment. See, e. g., McClure v. Union, et al., Counties, 188 N.W.2d 283, 287 (Iowa 1971); Musselman v. Central Telephone Co., 261 Iowa 352, 356, 154 N.W.2d 128, 130 (1967); §§ 85.3(1), .20, The Code. To occur in the course of employment, the injury must occur within the period of employment. E. g., McClure, 188 N.W.2d at 287; Golay v. Keister Lumber Co., 175 N.W.2d 385, 386 (Iowa 1970). Isolating and proving the particular period of employment that caused a claimant's occupational disease may be extremely difficult if the claimant was exposed to the same hazardous conditions while employed with various employers. The reason for this is that clinical manifestations of occupational diseases are typically caused by prolonged exposure to hazardous substances. See 3 A. Larson, The Law of Workmen's Compensation § 95.21, at 508.136–.137 (1976).

To overcome this problem of proving causation in the occupational disease context, chapter 85A identifies the employer who shall be held accountable. Section 85A.10 imposes liability upon the last employer in whose employment the claimant was injuriously exposed to the hazardous condition of employment. It does not require that the claimant prove that his disease was actually caused by that exposure. Rather, we believe it is sufficient that he show that the hazardous employment condition which at some time caused his disease existed to the extent necessary to possibly cause the disease at his last employer's place of employment. Accord, Climax Uranium Co. v. Claimants, 33 Colo.App. 337, 522 P.2d 134 (1974); W. M. Coal Co. v. Campbell, 344 S.W.2d 794 (Ky.1961) (also interpreting statutes imposing liability on employer in whose employment the claimant was last injuriously exposed to the hazards of the disease); see 3 A. Larson, supra § 95.21, at 508.140 ("[B]efore the last-injuri-

ous-exposure rule can be applied, there must have been *some* exposure of a kind contributing to the condition."); Note, *The Iowa Occupational Disease Law*, 34 Iowa L.Rev. 510, 515–16 (1949). Thus, once the claimant has proved that he has a disease caused by the hazards of his occupation, a narrow presumption of causation by a particular period of employment is, in effect, created by section 85A.10 to aid claimants in meeting their burden of proof.

However, it appears that the legislature believed that causation is so speculative in cases of pneumoconiosis [3] that special provisions were necessary to assure the probability of its employment causation. Accordingly, section 85A.10 also provides that only the employer in whose employment the claimant was last injuriously exposed to the hazards of his disease for at least sixty days may be held liable. It is in this context that section 85A.13(2) must be construed.

■ Like the sixty day limitation in section 85A.10, section 85A.13(2) was designed to assure the employment relatedness of the claimant's disease. *Accord, Notch v. Victory Granite Co.*, 306 Minn. 495, 506–07, 238 N.W.2d 426, 433 (1976) (interpreting the essentially identical presumption in Minn. Stat. § 176.662 (1971)). It does this by requiring the claimant who lacks conclusive evidence of occupational causation to show that he has suffered a specified length of exposure to dust inhalation. In the absence of such a showing, section 85A.13 creates a presumption of the nonexistence of occupational causation. As such, it serves only defendants by heightening the proof requirements of occupational causation in pneumoconiosis cases. Its only relationship to the presumption serving claimants, given in section 85A.10, is that of establishing a length of exposure to dust inhalation which must be met, if the claimant cannot other-

wise conclusively prove occupational causation, as a prerequisite to invoking the section 85A.10 presumption.

Another rule which supports our construction is that "[w]ords and phrases shall be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such meaning." § 4.1(2), The Code; *see City of Des Moines v. Elliott*, 267 N.W.2d 44, 45–46 (Iowa 1978). Both the words "disability" and "pneumoconiosis" are statutorily defined, *see* §§ 85A.4, .13(1), The Code, and thus "have acquired a peculiar and appropriate meaning in law." Claimant's construction of section 85A.13(2) ignores the criteria stated in those definitions and substitutes a criterion of dust exposure for a particular length of time. We are convinced that both the existence of pneumoconiosis and disability resulting from it must be proved in accordance with the statutory criteria before the presumption in section 85A.10 and the exception to the presumption in section 85A.13(2) apply. *Cf. Ciaravella v. Richardson*, 377 F.Supp. 201, 203 (W.D.Pa.1974) (refusing to apply statutory presumption of death due to pneumoconiosis because claimant presented no evidence of pneumoconiosis, as required by statute); *Robinson v. Crider Mining Co.*, 533 S.W.2d 530, 532 (Ky. 1976) (refusing to apply statute presuming that all disability resulting from pneumoconiosis complicated with other disease is work related and compensable because workmen's compensation board found claimant did not have pneumoconiosis).

■ B. *Finding that Claimant Failed to Prove an Occupational Disease.* In his ruling, the deputy concluded that claimant

---

**3.** Difficulty in determining the particular cause may be attributable to the variable and insidious nature of the disease. According to an article by Dr. Hanson, incorporated into the record, pneumoconiosis may be caused by the inhalation of a variety of types of dust particles. Thus, there are a variety of pneumoconioses, depending upon the source of the disease: silicosis, asbestosis, coal workers' pneumoconi-

osis and others. The typical symptoms may vary among the different diseases and among the stages of progression of an individual disease, ranging from only radiographic changes to severe functional impairment. Development of the disease may be so gradual that physical manifestations do not appear for twenty years or so. Hanson & Kasik, *The Pneumoconioses*, 6 Heart & Lung 646 (1977).

failed to sustain his burden of proof of an occupational disease under chapter 85A. The only apparent stated reason for that conclusion was his determination that claimant did not have pneumoconiosis. Nonetheless, the deputy apparently accepted as true Dr. Hanson's opinion that claimant did suffer from chronic bronchitis and asthma which were probably induced by his inhalation of coal dust. The deputy's reasons for rejecting the conclusion that those diseases constituted occupational diseases under chapter 85A are either erroneous or unstated. Consequently, under *Sondag v. Ferris Hardware*, 220 N.W.2d 903, 908 (Iowa 1974), we must reverse and remand so that the commissioner may either set forth its unstated adequate reasons or re-examine the evidence, applying the correct legal principles.

If the deputy's sole reason for concluding that claimant's chronic bronchitis and asthma do not constitute occupational disease was that only diseases mentioned by name in chapter 85A qualify as occupational diseases, he erroneously decided the issue of whether claimant has an occupational disease. In 1973, the legislature broadened the definition of occupational diseases in section 85A.8 by omitting the restriction that the disease in question be one of those listed in a schedule of specific diseases. 1973 Session, 65th G.A., ch. 144, § 24. In fact, it eliminated from chapter 85A that schedule of diseases. *Id.* § 30 (repealing § 85A.9, The Code 1973). Hence, the fact that claimant was not found to have pneumoconiosis or any other previously scheduled disease did not altogether preclude his chances for recovery under chapter 85A.

Additionally, we are unwilling to conclude as a matter of law that the deputy's finding that claimant failed to prove an injury under chapter 85 dictates a finding that he also failed to prove an occupational disease. By the same session law that broadened the definition of occupational disease, the legislature narrowed the definition of "injury" to exclude occupational diseases as defined in section 85A.8. 1973 Session, 65th G.A., ch. 144, § 21. Consequently, the concepts of injury and occupational disease cannot be used interchangeably.

Moreover, the criteria for establishing the employment causation of an injury under chapter 85 are not the same as those for establishing employment causation of an occupational disease under chapter 85A. As previously stated, to qualify for benefits under chapter 85, the claimant must prove that his injury arose out of and in the course of his employment with the defendant employer. On the other hand, to prove causation of an occupational disease, the claimant need only meet the two basic requirements imposed by the statutory definition of occupational disease, given in section 85A.8.[4] First, the disease must be causally related to the exposure to harmful conditions of the field of employment. All but the last sentence of the definition pertains to that requirement. Dahl, *The Iowa Workmen's Compensation Law and Federal Recommendations*, 24 Drake L.Rev. 336, 343 (1975). Secondly, those harmful conditions must be more prevalent in the employment concerned than in everyday life or in other occupations. The latter requirement is based on the last sentence of the definition.[5]

4. That section provides:
Occupational diseases shall be only those diseases which arise out of and in the course of the employee's employment. Such diseases shall have a direct causal connection with the employment and must have followed as a natural incident thereto from injurious exposure occasioned by the nature of the employment. Such disease must be incidental to the character of the business, occupation or process in which the employee was employed and not independent of the employment. Such disease need not have been foreseen or

expected but after its contraction it must appear to have had its origin in a risk connected with the employment and to have resulted from that source as an incident and rational consequence. A disease which follows from a hazard to which an employee has or would have been equally exposed outside of said occupation is not compensable as an occupational disease.

5. We do not construe this sentence to also mean that the claimant's disease should be excluded merely because it is one which mem-

*See generally* 1B A. Larson, *The Law of Workmen's Compensation* § 41.32–33 (1978).

The fact that other employment experiences which the claimant had prior to working for the defendant employer may have also caused his disease will not defeat his claim because of the presumption of causation from employment with the last employer provided in section 85A.10. In his ruling, the deputy stated that claimant failed to sustain his burden of proof of employment causation of injury because the medical evidence failed to specifically relate claimant's disease to his exposure to coal dust "while working for defendant employer immediately preceding the injury date of April 26, 1977." It is not entirely clear what that statement meant. If it meant that claimant failed to prove that his exposure to coal dust while working for the defendant employer was in fact the cause of his disease, claimant could still prevail under chapter 85A. If, on the other hand, it meant that claimant failed to prove that coal dust which could have caused his disease was present in defendant employer's mines, section 85A.10 will not aid claimant in sustaining his burden of proof. The evidence regarding the existence of dangerous quantities of coal dust in Big Ben's mines was not fully developed. Thus, we leave this determination for the industrial commissioner on remand if employment causation under chapter 85A remains an issue which must be resolved. Because section

85A.10 had not been previously construed by this court, we believe opportunity should be afforded claimant to present further evidence concerning the existence of quantities of coal dust in Big Ben's mines which could have caused his disease.

■ C. *Finding that Claimant Is Not Disabled.* The deputy ruled that claimant failed to prove he was disabled from his afflictions. Ordinarily, compensation is awarded for disability, not for injury as such. *Deaver v. Armstrong Rubber Co.,* 170 N.W.2d 455, 466 (Iowa 1969). From the statements made concerning disability, it appears that the deputy may have applied erroneous legal principles in determining whether claimant is disabled.

Apparently, the only evidence bearing on claimant's disability which he considered was the testimony of Dr. Hanson. Dr. Hanson found that claimant did suffer a certain degree of disability. He additionally found that claimant could perform the same amount of work as an average person his age and that he could perform the work of an underground supervisor.

■ Contrary to the deputy's ruling, those two additional findings do not necessarily negate the initial finding that claimant is disabled. First, the fact that the normal aging process may produce the ailment from which a claimant suffers as an actual result from his employment experi-

---

bers of the general public may acquire under ordinary circumstances, provided that the claimant's particular disease arose from the peculiar hazards of his employment. *Cf. Schwitzer-Cummins Co. v. Hacker,* 123 Ind. App. 674, 112 N.E.2d 221 (1953) (bronchiectasis caused by inhalation of iron dust held occupational disease, defined, in part, in Ind.Code § 22–3–7–10 (1976) (formerly 1937 Ind.Acts, ch. 69, § 6) as disease "which does not come from a hazard to which workmen would have been equally exposed outside of the employment"); *Robinson v. Crider Mining Co.,* 533 S.W.2d 530, 532–33 (Ky.1976) (remanding for consideration of whether claimant's chronic bronchitis was an occupational disease under statutory definition revised to eliminate the exclusion of ordinary diseases to which the general public is equally exposed); *Herrera v. Fluor Utah, Inc.,* 89 N.M. 245, 246–47, 550 P.2d 144, 145–46 (1976) (chronic bronchitis, kidney disor-

ders and chronic asthma caused by inhalation of paint fumes held occupational disease, defined as "disease peculiar to the occupation in which the employee was engaged and due to causes in excess of the ordinary hazards of employment as such"); *King v. Oregon Steel Mills, Inc.,* 25 Or.App. 685, 550 P.2d 747 (1976) (pulmonary disease caused by inhalation of smoke and fumes in furnace area held occupational disease, defined as "[a]ny disease or infection which arises out of and in the scope of the employment, and to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein"); *Perrin v. Brunswick Corp.,* 333 F.Supp. 221, 222–23 (W.D.Va.1971) (reporting holding by Industrial Commission of Virginia that asthmatic bronchitis, although probably caused by inhalation of gas, was not an occupational disease because statute excluded ordinary diseases of life).

ence does not operate to bar a finding of disability. *See, e. g., M. D. Thompson & Son Co. v. McCuan*, 255 Ark. 762, 502 S.W.2d 93 (1973); *Furlong v. Northwestern Casket Co.*, 190 Minn. 552, 554–55, 252 N.W. 656, 657–58 (1934); 2 A. Larson, *The Law of Workmen's Compensation* § 59.20, at 10–281 (1976).

Secondly, Dr. Hanson's evaluation of claimant's functional ability to perform his work does not necessarily dispose of the issue of his disability within the contemplation of workers' compensation law. Disability from injuries covered by chapter 85 has been defined by case law as "industrial disability," or a reduction in earning capacity. *E. g., Olson v. Goodyear Service Stores*, 255 Iowa 1112, 1120, 125 N.W.2d 251, 256 (1963). Among the criteria considered in determining industrial disability are the claimant's "age, education, qualifications, experience and his inability, because of the injury, to engage in employment for which he is fitted." *Id.* at 1121, 125 N.W.2d at 257. Functional disability, while a consideration, has not been the final criterion. *Id.* at 1120, 125 N.W.2d at 256. This was exemplified in *Diederich v. Tri-City Railway*, 219 Iowa 587, 594, 258 N.W. 899, 902 (1935), which concluded, "His [functional] disability may be only a twenty-five or thirty per cent disability compared with the one hundred per cent perfect man, but, from the standpoint of his ability to go back to work to earn a living for himself and his family, his disability is a total disability . . . ." Importat factors in the decision were that claimant was fifty-nine years of age, that he had little or no education and that his injury kept him from performing all kinds of physical work. Similar factors supported a finding of permanent total disability in *Dailey v. Pooley Lumber Co.*, 233 Iowa 758, 765–66, 10 N.W.2d 569, 573–74 (1943) (considering claimant's functional disability of seventy-

five to one hundred per cent, his age of sixty-five, his limited education and training and his nonperformance of physical labor since date of injury). *See also Martin v. Skelly Oil Co.*, 252 Iowa 128, 133–35, 106 N.W.2d 95, 98–99 (1960) (considering claimant's employment history and earnings since date of accident).

There is no reason to believe that these criteria should not also be applicable in determining the claimant's capacity to perform his work or to earn equal wages in other suitable employment, the standards for determining disability under section 85A.4, at least in cases where claimant proves that he has been unable to continue working for reasons related to his disease.[6] *See* § 85A.17, The Code. These reasons may not always be directly related to functional impairment. For example, a defendant-employer's refusal to give any sort of work to a claimant after he suffers his affliction may justify an award of disability. *See, e. g., Wood v. Industrial Commissioner*, 13 Ariz.App. 449, 452–53, 477 P.2d 568, 571–72 (1970); *Rosenau Bros. v. Workmen's Compensation Appeal Board*, 10 Pa. Cmwlth.Ct. 462, 464–66, 311 A.2d 160, 161–62 (1973). Similarly, a claimant's inability to find other suitable work after making bona fide efforts to find such work may indicate that relief should be granted. *See, e. g., Dean v. Industrial Commission*, 113 Ariz. 285, 551 P.2d 554 (1976); *Franklin Fabricators v. Irwin*, 306 A.2d 734 (Del.1973). *See generally* 2 A. Larson, *supra* § 57.61. According to McSpadden's undisputed testimony, he has been unable to secure employment since he worked for the defendant Big Ben. However, we cannot say that the evidence is such that reasonable minds could not draw different inferences from it regarding whether his inability to secure employment has been caused by reasons related to his disease. Hence, remand is necessary so that this and other evidence

---

6. If the claimant is able to continue in employment, however, § 85A.5 permits the payment of only reasonable medical services. That section has been interpreted as implying that a primary consideration in determining disability under

chapter 85A is loss of wages. *See* Dahl, *The Iowa Workmen's Compensation Law and Federal Recommendations*, 24 Drake L.Rev. 336, 342–43 (1975).

relevant to determining claimant's industrial disability may be reconsidered in light of the proper standards for determining disability or for a supplemental decision showing the reasons why all evidence bearing on claimant's industrial disability, other than Dr. Hanson's testimony, was rejected.

 D. *Failing to Require Defendants to Support Their Pleaded Affirmative Defense.* Claimant also assails the deputy's ruling for omitting to make conclusions regarding defendants' alleged failure to prove the assertion in their pleadings that claimant's condition arose out of causes other than those connected with his employment. He cites *McDowell v. Town of Clarksville,* 241 N.W.2d 904, 907–08 (Iowa 1976). That case states that the defendant has a burden of going forward with proof of his affirmative defense if the claimant establishes a prima facie case. Because the deputy found that plaintiff failed to prove a prima facie case, his legal reasoning was not incorrect for failing to consider the extent of defendants' proof of their affirmative defense. By his thinking, the burden of going forward with evidence never shifted. Moreover, we reaffirm the principle reiterated in *McDowell* that the burden of persuasion regarding causation never shifts from the claimant to the defendant. In other words, even if the defendants did fail to prove their affirmative defense, that would not mandate a finding against them. Rather, it would only subject them to the risk that the fact finder would find that claimant had sustained his burden of proving causation. 241 N.W.2d at 908.

III. *Allegation of Inadequate Findings in Deputy's Order Overruling Claimant's Motion for an Order Compelling Discovery.*

 Claimant propounded an interrogatory, which was answered by David Lewis, an officer of defendant employer, in relevant part, as follows:

*INTERROGATORY NO. I:* Identify by date and description each report, statement, transcription or photograph known to exist concerning this claim, giving the present locations, custodians and distinguishing subject matter of each.

*ANSWER:* . . . David Lewis, Secretary-Treasurer of Big Ben Coal Company, gave statement on June 9, 1977 regarding the claimant's claim and statement is in possession of Defendant's attorneys, which statement is claimed to be privileged.

Subsequently, claimant filed a motion for an order compelling discovery, pursuant to Iowa R.Civ.P. 134(a), 126(a), on the grounds that "[d]efendant has unlawfully failed and objected to answering without substantial justification. . . . ." In response, defendants filed a resistance to the motion, which stated in four numbered paragraphs reasons, with cited authority, why claimant's motion should be denied. The deputy to whom the motion was submitted ruled in favor of defendants. His ruling set forth the above quoted interrogatory and answer, summarized the grounds stated in claimant's motion and then disclosed that his decision was "[b]ased on the points cited in paragraphs numbered 2 and 3 in defendant's resistance."

Claimant challenges the adequacy of the deputy's ruling on the basis of three Code provisions. The first two, §§ 17A.15 (2), .16(1), The Code, refer to the specificity required of proposed or final decisions of an agency, not that of its rulings on motions. The third, Iowa R.Civ.P. 118, *see also* 500 I.A.C. § 4.35, also fails to assist claimant's argument. That rule provides: "A motion, or other matter involving separate grounds or parts, shall be disposed of by separate ruling on each and not sustained generally." There are two reasons why claimant is entitled to no remedy under this rule. First, claimant stated no varied specific grounds for his motion upon which the deputy could have separately relied. Secondly, the motion was overruled, and the rule applies only to motions that are sustained. *Lewis v. State,* 256 N.W.2d 181, 196 (Iowa 1977). In any event, we have previously held that even a failure to comply with the rule is nonprejudicial and thus nonreversible error if the basis for the ruling is clear. *See, e. g., Giltner v. Stark,*

252 N.W.2d 743, 745 (Iowa 1977); *Dobson v. Jewell*, 189 N.W.2d 547, 554–55 (Iowa 1971).

IV. *Denial of Claimant's Request for Reimbursement for Medical Examination.*

 At a prehearing held on August 11, 1977, claimant requested reimbursement for an examination by a physician of his choice, pursuant to section 85.39, The Code. Section 85.39 provides in relevant part:

Whenever an evaluation of permanent disability has been made by a physician retained by the employer, and the employee believes this evaluation to be too low, he shall, upon application to the commissioner and at the same time delivery of a copy to the employer and its insurance carrier, be reimbursed by the employer the reasonable fee for a subsequent examination by a physician of his own choice, and reasonably necessary transportation expenses incurred for such examination.

The deputy commissioner presiding over the prehearing ruled that reimbursement cannot be ordered under section 85.39 until liability for an injury has been established by the filing of a memorandum of agreement, *see* § 86.13, The Code; 500 I.A.C. 3.1(2), or by an adjudication. Because defendants' liability had not been established, claimant's request was denied. The commissioner, in his review decision, agreed with the deputy commissioner's reasoning.

Claimant contends that section 85.39 should be construed to permit a medical examination furnished by the employer at any point after the defendant has denied liability. That contention is erroneous because of the reason stated by the deputy and the commissioner. That the section 85.39 provision for reimbursement for a medical examination does not come into play until the defendant's liability is established is supported by the legislative history of that provision. Originally, that provision was included in section 85.34. *See* § 85.-34(2)(u), The Code 1975 (amended by 1976 Session, 66th G.A., ch. 1084, § 12). Section

85.34(2) sets forth the manner in which compensation for an unscheduled permanent partial disability shall be determined. As such it presupposes that a right to compensation has been established. By moving the provision for reimbursement for medical examinations from section 85.34 to section 85.39, *see* 1976 Session, 66th G.A., ch. 1084, § 17, the legislature apparently simply wanted to make that provision more easy to find. Section 85.39 relates only to medical examinations of injured employees whereas section 85.34 covers the broad topic of compensation for permanent disabilities.

Moreover, there is no reason to conclude that by its revision the legislature intended to permit employer furnished medical examinations merely to aid the claimant's discovery. Such a conclusion would be entirely inconsistent with the first paragraph of section 85.39, which provides that the employee must bear the cost of having his own physician present during an examination instigated at the behest of the employer.

V. *Allowance of Deposition of Dr. Hanson to Be Taken After Hearing.*

In the prehearing order filed August 25, 1977, it was directed that medical depositions be taken by September 19, 1977. However, on September 16, defendants filed a motion, requesting that they be granted an additional thirty days beyond September 19 for the purpose of taking Dr. Hanson's deposition. The motion included a sworn statement, giving the reasons why the completed report by Dr. Hanson was not yet available and why a deposition could not have been previously scheduled.

At the hearing on September 22, defendants' motion was granted, and defendants' counsel offered two dates during the first week of October for taking the deposition. Claimant's counsel protested the ruling at the hearing and again in a subsequently filed motion to quash and suppress notice and medical deposition.[7] In response, defendants filed a resistance to the motion on October 6 which restated and expanded

---

7. No ruling was issued on claimant's post-hearing motion for the likely reason that it had, in effect, already been ruled upon by the deputy

at the hearing, when he granted defendants' request to take Dr. Hanson's deposition after the hearing.

upon the reasons justifying their request for the delayed deposition. The deposition was taken October 4, 1977; claimant's attorney cross-examined Dr. Hanson at length at that time; and the deposition was admitted into evidence and considered by the deputy commissioner in his arbitration decision.

Claimant complains that 500 I.A.C. § 4.31 was violated by the granting of defendants' motion. That section provides:

> When notice of assignment of hearing is received by the parties or attorneys of record at least sixty days prior to the date of hearing, no evidence shall be taken after the thirtieth day following the hearing. Each party shall indicate by written statement filed at the hearing the dates of taking of any depositions or other evidence to be taken within the thirty days following the hearing. In no event shall any examination or evaluation for evidential purposes in a contested case proceeding be permitted following a hearing, except upon presentation of a sworn statement by counsel or party, if not represented, that due diligence was exercised to arrange for the examination or evaluation and that due to circumstances beyond the control of the party seeking to obtain the evaluation or examination, the evaluation or examination could not be obtained by the date of the hearing. Such a sworn statement shall include a full explanation of the facts on which the required grounds are based.

Claimant argues that defendants filed the sworn statement late because it was not filed until fourteen days after the hearing. Assuming arguendo that the deposition of Dr. Hanson constituted an "evaluation" within the contemplation of 500 I.A.C. § 4.31 and that a sworn statement was thus required, we conclude that section 4.31 was properly followed here. Initially, we observe that defendants' first sworn statement was included in the motion filed September 16, six days before the hearing. Only the second sworn statement, which was included in the resistance filed on October 6, was not presented until fourteen days

after the hearing. Secondly, we note that claimant misreads the statute. It is the statement of dates of taking future depositions which must be filed at the hearing; the statement of reasons for the request for a delayed examination or evaluation presumably could be filed either before or during the hearing.

Claimant also argues that defendants' statement failed to reveal that due diligence was exercised to arrange to obtain the full evaluation by Dr. Hanson prior to the hearing date and that circumstances beyond defendants' control were responsible for defendants' inability to obtain his report or deposition earlier. When reviewing the interpretation of an administrative agency of regulations which it has issued, we examine its factual findings to see if they are supported by substantial evidence and its measurement of those findings against the regulatory standard to see if there was an abuse of discretion. *See Temple v. Vermeer Manufacturing Co.*, 285 N.W.2d 157, 160 (Iowa 1979); *cf.* 4 K. Davis, *Administrative Law Treatise* § 30.12 (1958) (noting great weight generally given by federal courts to agency interpretations of their own regulations).

We find that there was substantial evidence in the record to support the factual reasons given in the sworn statement contained in defendants' motion for extending time, which was approved by the deputy. Also, we believe there was no abuse of discretion here. Initially, we cannot say that the reasons included in defendants' sworn statement, which were further explained at the hearing, were inconsistent with a finding of due diligence by defendants in attempting to obtain Dr. Hanson's report or deposition prior to the hearing. It was revealed that by August 11, 1977, defendants had scheduled claimant for a physical examination by Dr. Hanson. Subsequently, defendants' counsel sought and obtained the agreement by claimant's counsel to make himself available on short notice for a deposition of Dr. Hanson. From September 14 until filing his motion, defendants' counsel unsuccessfully attempted

to reach claimant's counsel by telephone to try to arrange the taking of Dr. Hanson's deposition before the hearing date.

Secondly, we cannot say that the reasons included in defendants' sworn statement were inconsistent with a finding that circumstances beyond their control prevented them from obtaining Dr. Hanson's full report or deposition earlier. Although Dr. Hanson's report, based on his examination of claimant, was received by claimant's counsel on September 14, certain understandable delays in providing Dr. Hanson with earlier x-rays of claimant detained the receipt of his brief supplementary report to cover those x-rays by claimant's counsel until the day of the hearing. Consequently, the deputy commissioner presiding over the arbitration proceeding ruled that Dr. Hanson's written report could not be admitted into evidence. Moreover, the apparent immediate reason why defendants' counsel was unable to arrange a deposition prior to the hearing was the fact that claimant's counsel failed to be available for a deposition of Dr. Hanson on short notice, as he previously indicated he would.

Finally, claimant apparently argues that 500 I.A.C. § 4.31 was promulgated in excess of the commissioner's statutory authority because it conflicts with Iowa R.Civ.P. 144(c). He also contends that depriving him of the live presentation of Dr. Hanson's testimony before the trier of fact denied him a fair hearing.

 We conclude that 500 I.A.C. § 4.31 was enacted well within the agency's statutory authority. As stated in *Temple*, 285 N.W.2d at 159, "A rule, to be valid, cannot be inconsistent with either statutory language or legislative intent." In *Temple*, we discerned legislative intent by examining the statutory authority for the rule in question. Section 86.18(2) of The Code provides: "The deposition of any witness may be taken and used as evidence in any pending proceeding or appeal within the agency."[8] A proceeding is "pending" until the

rendition of final judgment. *Black's Law Dictionary* 1291 (4th ed. 1968); *cf. In re Estate of Lee*, 240 Iowa 691, 694–96, 37 N.W.2d 296, 298–99 (1949) (action is still pending until appeal is disposed of). Other statutory authority for the admission of depositions in administrative proceedings may be found in section 17A.14(1), The Code, which provides that, subject to certain requirements, "when a hearing will be expedited and the interests of the parties will not be prejudiced substantially, any part of the evidence may be required to be submitted in verified written form." Section 86.8(1) confers upon the commissioner the duty "[t]o establish and enforce all necessary rules not in conflict with the provisions of this chapter and chapters 85, 85A and 87 for carrying out the purposes thereof," and section 17A.3(1)(b) requires that all agencies adopt rules governing procedures available to the public. We believe that the Code sections described here plainly authorized the establishing of section 4.31 to regulate the acceptance of depositions after a hearing before a deputy commissioner.

The fact that section 4.31 conflicts with Iowa R.Civ.P. 144(c) is of no consequence. Section 17A.14(1) of The Code indicates that rules of evidence governing jury trials do not necessarily apply to contested case proceedings before administrative agencies. Furthermore, as previously indicated, both sections 86.18(2) and 17A.14(1) endorse the admission of depositions in proceedings of this kind, with none of the limitations given in Iowa R.Civ.P. 144(c). We can but conclude from these statutory provisions that the legislature intended that rule 144(c) should have no application here. *See also* 500 I.A.C. § 4.35 ("The rules of civil procedure shall govern the contested case proceedings before the industrial commissioner *unless the provisions are in conflict* with these rules and chapters 85, 85A, 86, 87 and 17A, or obviously inapplicable to the industrial commissioner." (Emphasis added.)).

8. A similar provision was found in § 86.21, The Code 1977. The current version was enacted by 1977 Session, 67th G.A., ch. 51, § 11, and approved April 29, 1977. Accordingly, it applies to the proceedings in this case. *See* § 3.7, The Code.

We also find no basis for holding that claimant was denied a fair trial because of the procedure followed here. Absent evidence of prejudice, we have held that the concept of a fair hearing does not require that the officer who actually determines the result of the hearing be present during the taking of testimony. *Anderson v. Oscar Mayer & Co.*, 217 N.W.2d 531, 533 (Iowa 1974); *see* § 17A.15(2), The Code. Certainly in cases in which the deponent is a disinterested medical expert, we have no reason to presume prejudice from the decision-maker's inability to observe the deponent's demeanor.

### VI. *Refusal to Permit Claimant to Rebut Dr. Hanson's Testimony with Depositions of New Witnesses.*

At the hearing on September 22, 1977, claimant requested that he be granted additional time to arrange for a deposition in rebuttal to Dr. Hanson's deposition. The deputy commissioner ruled that claimant was to be allowed to take depositions within thirty days of the hearing but that he was to be limited to taking depositions only from the physicians from whom he had submitted reports.

We are satisfied that this ruling was not arbitrary, as claimant asserts, in view of the language of 500 I.A.C. § 4.31. As previously indicated, section 4.31 requires that, to qualify to present evidence based on an examination or evaluation made after the hearing, a party must show that he exercised due diligence to obtain the evidence earlier, but that, because of circumstances beyond his control, he was unable to do so. Claimant's only conceivable showing in this regard was his statement that Dr. Hanson's testimony was completely unknown to him and thus he could not have prepared for rebuttal prior to the hearing. In his ruling at the hearing, the deputy implicitly found to the contrary by concluding from the record before him that claimant's counsel was previously aware of the examination by Dr. Hanson and of defendants' desire to introduce Dr. Hanson's testimony into the record.

Substantial evidence, our standard of review for factual findings of an administrative agency, *e. g., Temple v. Vermeer Manufacturing Co.*, 285 N.W.2d 157, 160 (Iowa 1979), supports the deputy's finding. First, as of August 11, 1977, claimant's attorney was advised that claimant was to be examined by Dr. Hanson. Secondly, on September 2, claimant's attorney learned that defendants also intended to depose Dr. Hanson and agreed to make himself available for that deposition on short notice. Thirdly, Dr. Hanson's written report, based on his examination of claimant, was made available to claimant's counsel at some time before September 15, when he notified defendants' counsel by written memorandum that he had received the report. Finally, according to his memorandum, claimant's counsel stated that he intended to cross-examine Dr. Hanson at the hearing on September 22.

After the deputy's arbitration decision was filed, claimant filed a notice of intent to offer additional evidence in conjunction with his petition for review by the industrial commissioner. Later, in response to a ruling by the industrial commissioner, claimant filed an expanded request, including his reason for not presenting the additional evidence to the deputy presiding over his hearing. His stated reason was that the testimony of Dr. Hanson was not known and could not have been anticipated at the hearing. The commissioner ruled that he was not satisfied that there was good reason, under 500 I.A.C. § 4.28(4), for failure to present additional evidence to the deputy. Claimant argues that his reason did satisfy section 4.28 and that the commissioner's ruling denied him due process.

In reviewing the commissioner's determination for compliance with 500 I.A.C. § 4.28, we search only for an abuse of discretion. *See Temple*, 285 N.W.2d at 160. We are convinced there was no abuse of discretion here, for largely the same reasons why we found no abuse of discretion by the deputy in complying with 500 I.A.C. § 4.31. There was substantial evidence in the record to show that claimant could have anticipated

before the hearing the likely submission and even content of Dr. Hanson's testimony.

In support of his denial of due process contention, claimant cites authority for the proposition that rules of procedure may not preclude a party from presenting the facts supporting his theory of the case. Claimant has not indicated either in his brief or in any of the previous proceedings that he has any actual evidence which he was prevented from adducing because of the commissioner's ruling. This alone may obviate review of his complaint. *See Louisville & Nashville Railroad v. Finn*, 235 U.S. 601, 609–10, 35 S.Ct. 146, 150, 59 L.Ed. 379, 384 (1915). In any event, we do not believe that rules of evidence confining the time for submitting evidence to a hearing established for that purpose deny due process of law. *See generally Danner v. Hass*, 257 Iowa 654, 667–68, 134 N.W.2d 534, 543 (1965).

Thus, in accord with the foregoing, trial court's judgment is affirmed in part, reversed in part and this case is remanded to the industrial commissioner with instructions.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED TO THE INDUSTRIAL COMMISSIONER.