Argued and submitted December 12, 1996, affirmed on petition; reversed on
cross-petition July 23, 1997

In the Matter of the Compensation of
Joseph R. Huff, Claimant.

FARMERS INSURANCE GROUP/
Sterling Griffiths,
*Petitioners - Cross-Respondents,*

*v.*

Joseph R. HUFF,
*Respondent - Cross-Respondent,*

*and*

Sterling GRIFFITHS,
*Respondent,*

*and*

SAIF CORPORATION,
*Respondent - Cross-Petitioner.*

(WCB 93-09144, 93-08632; CA A92755)

942 P2d 853

Jerald P. Keene argued the cause and filed the brief for petitioners - cross-respondents.

Richard D. Barber, Jr., argued the cause for respondent Sterling Griffiths and respondent - cross-petitioner SAIF Corporation. With him on the brief was Bostwick, Sheridan and Bronstein.

Robert Pardington waived appearance for respondent - cross-respondent Joseph R. Huff.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

## WARREN, P. J.

Farmers Insurance Group (Farmers), as employer's insurer for the first of claimant's four shoulder incidents, petitions for review of an order of the Workers' Compensation Board setting aside its denial of responsibility for claimant's compensable left shoulder condition. It renews its arguments before the Board that SAIF, as processing agent for the non-complying employer, should be responsible for claimant's condition. SAIF cross-petitions from the Board's assessment against it of a $2,800 attorney fee. We affirm on the petition and reverse on the cross-petition.

The issues in this case are (1) responsibility and (2) attorney fees. The only facts that are truly material to our discussion concerning responsibility are not disputed. Claimant, a mechanic at the employer's service station, experienced left shoulder symptoms in connection with four work incidents. Farmers was on the risk for the first incident on June 19, 1992, when a transmission claimant was installing fell on his left shoulder. Claimant informed his employer of the incident but neither sought medical treatment nor missed time from work, although he continued to experience pain.

The next three incidents occurred between July 1, 1992, and May 10, 1993, while employer was not in compliance with Oregon's workers' compensation law. Claimant reported all three incidents to employer, but he did not seek medical attention until after the last incident. Before the June 1992 incident, claimant had had no left shoulder problems.

Both Farmers and SAIF, as statutory processing agent for employer during its period of noncompliance, issued responsibility denials/disclaimers. No insurer denied compensability of claimant's left shoulder condition as an accidental injury, but SAIF specifically denied a claim for an occupational disease.

Claimant sought a hearing, asserting that his left shoulder condition was compensable as an accidental injury or, in the alternative, as an occupational disease. Claimant

also sought penalties and attorney fees against SAIF as processing agent for the noncomplying employer for alleged unreasonable denials.

At hearing, the administrative law judge (ALJ) concluded that claimant's condition constituted an accidental injury and not an occupational disease. The ALJ found that the June 1992 incident constituted the major contributing cause of claimant's shoulder condition and need for treatment. The ALJ held Farmers responsible for claimant's left shoulder condition on the grounds that Farmers was employer's workers' compensation carrier at that time and that there was no basis for shifting responsibility to SAIF. The ALJ also awarded claimant an assessed attorney fee of $3,800, payable by Farmers, on the ground that claimant's attorney had "actively and meaningfully participated within the meaning of the law."[1]

Farmers sought review before the Board, contending that (1) the claim should be analyzed as an occupational disease rather than an accidental injury, (2) SAIF waived its right to contest responsibility under *former* ORS 656.308(2) because it had issued an untimely denial of responsibility, and (3) under *amended* ORS 656.308(2)(d), claimant's fee should be reduced to $1,000. On review, the Board adopted the ALJ's findings of fact.

The Board rejected Farmers' contention that this claim involved "a series of traumatic events" that culminated in claimant's need for medical treatment and that, consequently, it should be treated as an occupational disease under ORS 656.802(1)(a)(C). The Board explained, pursuant to *Dickson v. Carolina Casualty*, 108 Or App 499, 814 P2d 567 (1991),[2] that the statutory phrase "series of traumatic

---

[1] We understand the ALJ to have made the attorney fee award pursuant to ORS 656.308(2)(d):

"Notwithstanding ORS 656.382(2), 656.386 and 656.388, a reasonable attorney fee shall be awarded to the injured worker for the appearance and *active and meaningful participation* by an attorney in finally prevailing against a responsibility denial. Such a fee shall not exceed $1,000 absent a showing of extraordinary circumstances." (Emphasis supplied.)

[2] In *Dickson* we simply reaffirmed, per curiam, our decision in *Sibley v. City of Phoenix*, 107 Or App 606, 610, 813 P2d 69, *rev den* 312 Or 527 (1991). It is clear that the Board, in referring to *Dickson*, therefore, really meant *Sibley*.

events or occurrences" referred to "micro-trauma" or "overuse" syndromes caused by repetitive physical trauma or activity of a body part such as a hip, elbow or wrist. Furthermore, the Board explained:

"[A]s the court noted in *Crowe v. Jeld-Wen*, 77 Or App 81, 85-86[, 712 P2d 145] (1985)[, *rev den* 301 Or 76 (1986)], 'An occupational disease is stealthy and steals upon its victim when he is unaware of its presence and approach. Accordingly, he cannot later tell the day, month or possibly even the year when the insidious disease made its intrusion into his body.' In this case, claimant knew precisely when his left shoulder symptoms began: June 19, 1992, when a transmission fell on his shoulder. Claimant had never previously had left shoulder problems and has been plagued ever since. In light of this, we conclude that claimant's claim, in which his left shoulder condition developed suddenly and unexpectedly on a specific date, was properly characterized as an accidental injury claim." (Citation omitted.)

Next, the Board concluded that under *Motel 6 v. McMasters*, 135 Or App 583, 899 P2d 1212 (1995), the 1995 legislative amendments to ORS 656.308(2) made by the adoption of Senate Bill 369 were not applicable to the claim. The Board then rejected Farmers' contention that, because SAIF's denial of responsibility was untimely, it should be held responsible for claimant's condition:

"Although a carrier's failure to comply with the disclaimer notice of *former* ORS 656.308(2) may preclude the carrier from attempting to shift responsibility to another carrier, the carrier's violation does not preclude the *claimant* from pursuing the claim with another carrier. *Penny L. Hamrick*, [46 Van Natta 14, *on recon* 46 Van Natta 410 (1994)]; *Jon F. Wilson* 45 Van Natta 2362 (1993). In this case, SAIF may be precluded from attempting to shift responsibility to Farmers by its failure to timely disclaim. However, claimant pursued his claim against Farmers. When the ALJ specifically asked claimant's counsel whether claimant was actively pursuing a claim against Farmers, counsel replied 'yes.' " (Emphasis in original.)

Finally, the Board affirmed the attorney fee award but reapportioned it between Farmers and SAIF. Pursuant to *amended* ORS 656.308(2)(d), the Board reduced Farmers'

assessment to $1,000 and, under ORS 656.386(1), held SAIF responsible for an attorney fee of $2,800 on the ground that SAIF denied compensability of the left shoulder *claim* by refusing to concede compensability under an occupational disease *theory*.

We review the Board's legal conclusions for errors of law, ORS 183.482(8)(a), and look to see that its findings are supported by substantial evidence in the record, ORS 183.482(8)(c).

On review here, Farmers renews the two arguments that it made below, contending that SAIF should be held responsible for claimant's compensable left shoulder condition. First, Farmers assigns error to the Board's treatment of the claim as an injury claim as opposed to an occupational disease. The thrust of Farmers' argument seems to be that this claim should be analyzed as an occupational injury, and, thus, responsibility for claimant's condition lies with SAIF under the "last injurious exposure" rule. Farmers' theory turns on the proposition that the facts here establish that claimant suffered "a series of traumatic events or occurrences" that resulted in his need for treatment or disability. It then follows, Farmers maintains, that under the "plain meaning" of ORS 656.802(1)(a)(C)[3] the claim should have been treated as one for an occupational disease as a matter of law. Moreover, Farmers contends that the Board's reliance on the "sudden and unexpected onset" standard as the benchmark for characterizing an injury versus the "gradual and unexpected onset" standard for an occupational disease was error. "Contrary to the Board's opinion," Farmers contends, "the fact the series began with an identifiable event at an identifiable time" is unremarkable, because "[e]very 'series of traumatic events or occurrences' necessarily begins with the

---

[3] ORS 656.802 provides, in part:

"(1)(a) As used in this chapter, 'occupational disease' means any disease or infection arising out of and in the course of employment caused by substances or activities to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein, and which requires medical services or results in disability or death, including:

"* * * * *

"(C) Any series of traumatic events or occurrences which requires medical services or results in physical disability or death."

first 'traumatic event or occurrence.' " The key, Farmers maintains, is that claimant's need for treatment or his disability arose from the cumulative nature of the series of events or occurrences. In response, SAIF argues that the Board, as a matter of fact, found that claimant suffered from an injury and not an occupational disease. We agree with SAIF that Farmers' arguments fail at the outset.

■ Farmers' argument is based on the fact that claimant did not seek medical treatment until after his fourth incident. The record, however, supports the conclusion that claimant needed treatment after his June 1992 incident but that he sought medical treatment for his shoulder condition only after he could no longer manage the pain at work. It is clear to us that the Board reached that conclusion, as a matter of fact, and then proceeded from it in assigning responsibility for claimant's condition. First, the Board[4] found that "[c]laimant's current left shoulder condition and need for treatment are the result of accidental injury and not occupational disease." Moreover, it found that "[claimant's] work injury to the shoulder in June 1992 is the major contributing cause of the current shoulder condition and need for treatment." Those findings are supported by substantial evidence in the record. Before making those findings, the Board restated the opinions of numerous physicians who examined claimant and who concluded that his shoulder condition did not, as a matter of fact,[5] arise from "a series of traumatic events or occurrences," ORS 656.802(1)(a)(C), and, therefore, was not the result of an occupational disease. The Board's findings of fact disclose that the record is replete with testimony from physicians who examined claimant and who concluded that claimant's subsequent episodes were merely "exacerbations or aggravations of the condition caused by the original injury in June 1992." The Board found that, after his first incident in June 1992, claimant's "pain never went

---

[4] On review, the Board adopted the ALJ's findings of fact, and we therefore refer to them throughout as the Board's findings of fact.

[5] In its brief, Farmers concedes:

"Admittedly, the question of whether the circumstances of a claim in fact constitute a 'series of traumatic events or occurrences' could present a question of fact upon which the Court must affirm if based on substantial evidence."

That is the case here.

away." The Board explained that claimant knew precisely when his left shoulder symptoms began and that he had never previously had left shoulder problems but has been plagued with them ever since. In that light, the Board's factual finding that claimant needed treatment after his June 1992 incident and that he sought medical treatment for his shoulder condition only after he could no longer manage the pain at work is supported by substantial evidence in the record. We therefore need not address Farmers' other arguments.

■    Farmers next assigns error to the Board's determination that it is responsible for claimant's compensable shoulder condition. Farmers' argument, in essence, is that SAIF is responsible, as a matter of law, for claimant's left shoulder condition by virtue of its untimely denial/disclaimer of responsibility.[6] This result follows, Farmers argues, because *former* ORS 656.308(2)[7] provided that SAIF "was precluded from asserting 'actual responsibility lies with another employer or insurer.'" SAIF responds that, under the facts, the Board correctly found Farmers responsible for claimant's left shoulder condition, and that "Farmers confuses the preclusion issue against SAIF with a mandate that the finder of fact must find SAIF responsible." The statutory

---

[6] *Former* ORS 656.262(6), since renumbered as ORS 656.262(6)(a) by Oregon Laws 1995, chapter 332, section 28, provides that claimant must receive written notice of denial of the claim from the insurer within 90 days after the employer has notice or knowledge of the claim.

[7] *Former* ORS 656.308(2) has since been significantly revised by the changes to the Workers' Compensation Law made by Senate Bill 369 in the 1995 legislative session. Or Laws 1995, ch 332, § 37. SAIF does not renew here the argument it made before the Board that *amended* ORS 656.308(2), which eliminated the responsibility disclaimer requirements of *former* ORS 656.308(2), is retroactively applicable. As we held in *Nordstadt v. Murphy Plywood*, 148 Or App 484, 941 P2d 1030 (1997), the 1995 amendments to ORS 656.308(2) are not applicable to this case because they alter time limitations with respect to actions that had been taken on the claim before the effective date of the Act. *Id*. at 491-93. *Former* ORS 656.308(2) provided, in part:

"Any employer or insurer which intends to disclaim responsibility for a given injury or disease claim on the basis of an injury or exposure with another employer or insurer shall mail a written notice to the worker as to this position within 30 days of actual knowledge of being named or joined in the claim. * * * Any employer or insurer against whom a claim is filed may assert, as a defense, that the actual responsibility lies with another employer or insurer, regardless of whether or not the worker has filed a claim against that other employer or insurer, if that notice was given as provided in this subsection."

preclusion, SAIF argues, "does not require the ALJ or the Board to find a certain way. It merely would have precluded SAIF from contesting a decision that it was responsible." On the present facts, we agree with SAIF.

The problem with Farmers' argument is that it would bar claimant from fully asserting his rights under ORS chapter 656. In reaching its decision, the Board relied on both *Penny L. Hamrick*, 46 Van Natta 14, *on recon* 46 Van Natta 410 (1994) and *Jon F. Wilson*, 45 Van Natta 2362 (1993). In those cases, the Board affirmed an assignment of responsibility to an insurer that had timely issued a disclaimer of responsibility in conformance with *former* ORS 656.308(2), when another insurer, one that had failed to comply with the statute, was also joined. In both instances, the Board held that the noncomplying disclaimer precluded the offending carrier from arguing that the other, complying carrier was responsible and that it did not preclude the claimant from otherwise asserting his or her rights under ORS chapter 656 and pursuing the compensability of a timely filed claim against the complying carrier. In each case, the Board concluded that the claimant had established a compensable claim against the complying carrier and imposed responsibility on it.[8] That is the case here, and Farmers offers no argument as to why the same result should not follow.[9]

■ We hold that *former* ORS 656.308(2) does not operate to bar a claimant from proceeding to prove the compensability of an injury or occupational disease claim against an insurer that issued an effective disclaimer of responsibility

---

[8] Our holdings in *Norstadt* and *Garibay v. Barrett Business Services*, 148 Or App 496, 941 P2d 1036 (1997), are readily distinguishable from our holding here. In those cases, the claimants pursued claims against employers whose attempted disclaimers of responsibility were ineffective under *former* ORS 656.308(2). Therefore, responsibility for claimant's compensable injury was not at issue and the question that we address here whether claimant could pursue the compensability of an injury or occupational disease claim against an insurer that issued a disclaimer of responsibility in accordance with the statute when another insurer that had failed to do so was also joined, was not before us.

[9] We also reject Farmers' argument that the "record contains no basis for ruling claimant took any position, let alone 'pursued' responsibility issues at the hearing." Farmers contends claimant simply "protected the record as to compensability, then retreated to a passive, indifferent position with regard to which employer was responsible." The Board found otherwise, and that finding is supported by substantial evidence in the record.

when another insurer that had failed to do so is also joined. It provides only that an insurer who fails properly to issue a denial or disclaimer of responsibility thereby loses the defense, if available, that another insurer is responsible. The Board did not err.

■ On cross-petition, SAIF maintains that the Board erred in awarding claimant a $2,800 attorney fee, payable by SAIF, on two grounds. First, SAIF argues that the Board erred because it addressed the issue of attorney fees under ORS 656.386(1) *sua sponte*. We reject that argument because we have consistently held that the Board's review is *de novo* and that it may reverse or modify the order of the referee or make any other disposition of the case that it determines to be appropriate. ORS 656.295(6); *see also McCrea v. Arriola Bros., Inc.*, 145 Or App 598, 599 n 1, 930 P2d 1180 (1997); *Gates v. Liberty Northwest Ins. Corp.*, 131 Or App 164, 167, 883 P2d 1339 (1994). Thus, the Board may award claimant attorney fees under ORS 656.386(1); the question is whether the Board was correct in doing so in this case.

■ SAIF contends that ORS 656.386(1) does not contemplate an award of an attorney fee where, as here, the Board affirmed SAIF's denial of the occupational disease theory of compensability. The Board applied a broad reading of the statute, looking simply at whether the insurer had denied, on any theory, compensability of claimant's *claim* for benefits. Of paramount significance, in the Board's analysis, is simply whether claimant successfully established entitlement to benefits. ORS 656.386(1)[10] provides, in part:

> "In * * * cases involving denied claims [11] where the claimant prevails finally in a hearing before an [ALJ] or in a review by [the board], then the [ALJ] or board shall allow a reasonable attorney fee. * * * For purposes of this section, a 'denied claim' is a claim for compensation which an insurer or self-insured employer refuses to pay on the express ground that the injury or condition for which compensation

---

[10] In 1995, the legislature amended ORS 656.386(1). We apply *amended* ORS 656.386(1) here because the amendments apply retroactively. *Volk v. America West Airlines*, 135 Or App 565, 573, 899 P2d 746 (1995), *rev den* 322 Or 645 (1996).

[11] ORS 656.005(6) defines "claim" as "a written request for compensation from a subject worker or someone on the worker's behalf, or any compensable injury of which a subject employer has notice or knowledge."

is claimed is not compensable or otherwise does not give rise to an entitlement to any compensation."

A claimant is entitled to an insurer-paid attorney fee under ORS 656.386(1) only if the employer denies the claim for compensation. If the employer denies responsibility but not compensability, it has not denied a claim for compensation and the statute is inapplicable. *Multnomah County School Dist. v. Tigner*, 113 Or App 405, 408, 833 P2d 1294 (1992); *Mercer Industries v. Rose*, 103 Or App 96, 98, 795 P2d 615, *rev den* 311 Or 150 (1991). The Board awarded fees on the ground that SAIF had denied the claim under an occupational disease theory. However, SAIF prevailed on that denial, and claimant is not entitled to fees under it.

Affirmed on petition; reversed on the cross-petition.