Argued and submitted April 16, reversed and remanded June 10, 1998

In the Matter of the Compensation of
Conrid J. Paxton, Claimant.

SAIF CORPORATION
and Sun Studs, Inc.,
*Petitioners,*

*v.*

Conrid PAXTON,
Woolley Enterprises and RLC Industries,
*Respondents.*

(WCB 95-00537, 94-13809, 94-10357; CA A93939)

959 P2d 634

Michael O. Whitty argued the cause and filed the brief for petitioners.

William Blitz argued the cause and filed the brief for respondent Woolley Enterprises.

Charles E. Bolen argued the cause for respondent RLC Industries. On the brief was Adam T. Stamper.

No appearance by respondent Conrid Paxton.

Before Edmonds, Presiding Judge, and Armstrong and Wollheim, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

SAIF and Sun Studs, Inc. (Sun Studs) seek reversal of an order of the Workers' Compensation Board that concluded that Sun Studs is the responsible employer for claimant's hearing loss. Compensability is not an issue in this case. Rather, the only issue is whether there is substantial evidence in the record to support the Board's finding that Sun Studs is the responsible employer. ORS 183.482(8). We reverse.

The Board found the following facts. From 1977 to January 1981, claimant worked for Woolley Enterprises (Woolley). From January 1981 to October 1991, he worked for RLC Industries (RLC). After October 1991, he worked for Sun Studs. Claimant's work for all three employers as a heavy equipment mechanic exposed him to noise. He wore no hearing protection until midway through his employment at RLC. Since that time, he has used hearing protection on an as-needed basis. His exposure to loud noise at Sun Studs is infrequent.

The Board relied on reports from two examining medical doctors. Dr. Scott concluded that all of claimant's hearing loss had occurred before June 4, 1981. In reaching his opinion, he relied on a June 4, 1981, hearing test and the fact that since June 1981 claimant's hearing loss has been relatively the same. Dr. Hodgson reported:

"I agree with previous reports that there has been no increase in hearing loss due to occupation noise exposure since 1981. Although I have seen changes at 2,000 Hz in both ears, this has occurred in the face of absolutely no change in hearing at 3,000 to 6,000 Hz, where noise exposure most commonly damages hearing. Therefore, in my opinion, the hearing changes at 2,000 Hz in both ears occurring after 1981 are due to nonoccupational factors. * * *

"[I]t is important to note that the sole cause of occupational hearing loss, in my opinion, is noise exposure prior to June 4, 1981. In my view, I see no evidence of occupational hearing loss occurring in either ear since June 4, 1981."

At the end his report, Hodgson answered specific questions posed by a SAIF claims adjuster.[1] He said:

---

[1] The actual questions are not in the record.

"1. The major contributing factor to the current level of hearing loss is occupational noise exposure prior to June 4, 1981.

"2. The development of hearing loss is not, in major part, related to idiopathic reasons or natural aging effects. It is possible that degenerative changes associated with aging have led to some changes at 2,000 Hz in both ears in recent years, though this represents a minor aspect of his hearing loss. *I feel the major portion of the hearing loss is due to occupational noise exposure, though, as mentioned above, this is due entirely to occupational noise exposure prior to 1981.*

"3. It is unlikely that much or any of the hearing loss is due to avocational activities. These types of activities clearly represent a minor contributing factor, if a factor at all.

"4. There has been no hearing loss due to any cause, aging, degenerative or noise damage, since October 1991. There is no evidence that employment at Sun Studs, Inc. has contributed in any way to the hearing loss." (Emphasis supplied.)

The Board first ruled that, because none of the three employers had accepted the hearing loss claim, the last injurious exposure rule applied. The Board explained:

"That rule provides that when, as here, a worker proves that an occupational disease was caused by work conditions that existed when more than one carrier was on the risk, the last employment providing potentially causal conditions is deemed responsible for the disease. *Boise Cascade Corp. v. Starbuck*, 296 Or 238[, 243, 675 P2d 1044] (1984)."

The Board then explained that the last employer, which in this case was Sun Studs,

"can shift responsibility to a prior carrier by showing that claimant's work exposure while a prior carrier was on the risk was the sole cause of claimant's hearing loss condition, or that it was impossible for conditions while SAIF/Sun Studs was on the risk to have caused that condition. *See FMC Corp. v. Liberty Mutual Ins. Co.*, 70 Or App 370, 374, [*689 P2d 1046 (1984),*] *mod* 73 Or App 223, [698 P2d 551,] *rev den* 299 Or 203 (1985)."

Applying those rules, the Board ruled that the sole cause of claimant's hearing loss was his work exposure before June 4, 1981, and that, therefore, Sun Studs was not the responsible employer.

RLC requested reconsideration, and the Board reversed its decision. It reasoned:

"Dr. Hodgson * * * determined that, based on the June 4, 1981 hearing test and the fact that claimant has experienced no increase in hearing loss due to occupational noise exposure after 1981, the major portion of claimant's hearing loss is due entirely to occupational noise exposure prior to June 4, 1981. * * *

"Neither physician specifically addressed whether claimant's pre-June 4, 1981 work was the sole cause of his hearing loss, or whether it was impossible for claimant's work conditions at Sun Studs to have caused that condition. Indeed, Dr. Hodgson's statement that the major portion of claimant's hearing loss was due entirely to pre-1981 work noise exposure admits, at least impliedly, that part of his hearing loss was due to post-1981 work noise exposure, which would include claimant's period of employment at Sun Studs."

SAIF requested reconsideration of that decision. It argued that the *sole* cause of claimant's occupational hearing loss was noise exposure before June 4, 1981, and that Hodgson's report could not be reasonably construed to mean that any hearing loss after June 4, 1981, was attributable to industrial exposure. The Board then issued a second order on June 19, 1996, on reconsideration, further explaining:

"We conclude that, if SAIF's interpretation of Dr. Hodgson's opinion is accepted, then Dr. Hodgson's opinion is inconsistent. That is, Dr. Hodgson found that claimant's current condition consisted of only 'possible' contribution for degenerative changes, and it was 'unlikely' that claimant's hearing loss was due to avocational activities. * * * Accordingly, Dr. Hodgson's opinion that claimant's pre-1981 occupational noise exposure was the major contributing factor to claimant's current hearing loss, when read in conjunction with his statement regarding nonwork contributors, could be construed to mean that post-1981 work

exposure could have partially contributed to claimant's current condition. * * * [W]e find that SAIF's argument that *all* of claimant's industrial noise exposure occurred prior to 1981 is inconsistent with Dr. Hodgson's quantification of claimant's condition in terms of the 'major' contributing cause." (Emphasis in original.)

In *Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990), the court said:

"[S]ubstantial evidence supports a finding when the record, viewed as a whole, permits a reasonable person to make the finding. ORS 183.482(8)(c). A court must 'evaluate the substantiality of supporting evidence by considering *all* the evidence in the record.' * * * That is, the court must evaluate evidence against the finding as well as evidence supporting it to determine whether substantial evidence exists to support that finding. If a finding is reasonable in light of countervailing as well as supporting evidence, the finding is supported by substantial evidence." (Emphasis in original; citations omitted.)

In this case, the Board's ruling is not supported by substantial evidence. In essence, the Board interpreted Hodgson's opinion to mean that Sun Studs was within the employer risk pool and that Sun Studs could not demonstrate that claimant's prior employer was the sole cause of claimant's hearing loss condition. The Board's interpretation centers around a single sentence in Hodgson's report, which says, "I feel the major portion of the hearing loss is due to occupational noise exposure, though, as mentioned above, this is due entirely to occupational noise exposure prior to 1981." The Board concludes that "Hodgson's statement that the major portion of claimant's hearing loss was due entirely to pre-1981 work noise exposure *admits, at least impliedly*, that part of his hearing loss was due to post-1981 work noise exposure, which would include claimant's period of employment at Sun Studs." (Emphasis supplied.) The Board misunderstands the unambiguous import of the sentence. The sentence first says that a major portion of the hearing loss is due to occupational noise exposure. It then informs the reader that all hearing loss due to occupational noise exposure occurred before 1981. The only reasonable inference from

Hodgson's statement is that any hearing loss after 1981 was due only to *nonoccupational* causes.

Moreover, Hodgson also said in his report, "There has been *no hearing loss due to any cause,* aging, degenerative or noise damage, since October 1991. *There is no evidence that employment at Sun Studs, Inc. has contributed in any way to the hearing loss.*" (Emphasis supplied.) When the sentence relied on by the Board is read in context with the rest of the report, it is unreasonable to infer that Sun Studs is responsible for claimant's hearing loss caused by his work activities. The record, viewed as a whole, permits only one reasonable interpretation: all of claimant's hearing loss due to occupational exposure occurred before June 4, 1981; some of claimant's hearing loss was caused by nonwork-related factors, but that loss occurred before October 1991; claimant suffered no hearing loss after October 1991 or after he began to work for Sun Studs. Because no hearing loss occurred while claimant was employed by Sun Studs, it cannot legally be the responsible employer on the claim. *See Roseburg Forest Products v. Long,* 325 Or 305, 313, 937 P2d 517 (1997).

Finally, Woolley argues that "[i]f the Court finds that Sun Studs is not responsible, then presumptive responsibility for Claimant's occupational disease shifts to RLC Industries and should remain there." It asks us to make that ruling. However, that issue is not before us to decide. The only order that is before us on review is the second order on reconsideration. That order does not decide whether responsibility shifts to RLC if Sun Studs is not the responsible employer. We remand to the Board for further consideration.

Reversed and remanded.