Argued and submitted January 19, affirmed September 29, 1999

In the Matter of the Compensation of
Samuel S. Garber, Claimant.

MACMILLAN PLUMBING
and TIG Insurance Co.,
*Petitioners,*

*v.*

Samuel S. GARBER;
Willamette Industries, Noe Plumbing, Inc.,
and SAIF Corporation;
and Advanced Plumbing and Heating
and SAIF Corporation,
*Respondents.*

(WCB 96-06257, 96-01910, 95-13580, 95-09850;
CA A101359)

986 P2d 1275

David L. Johnstone argued the cause for petitioners. With him on the brief was VavRosky, MacColl, Olson, Busch & Pfeifer, P.C.

No appearance by respondent Samuel S. Garber.

Brad G. Garber argued the cause and filed the brief for respondent Willamette Industries.

Julene M. Quinn argued the cause and filed the brief for respondents Noe Plumbing, Inc., and SAIF Corporation.

Thaddeus H. Hettle argued the cause and filed the brief for respondents Advanced Plumbing and Heating and SAIF Corporation.

Before Edmonds, Presiding Judge, and Armstrong and Kistler,* Judges.

ARMSTRONG, J.

---

* Kistler, J., *vice* Warren, P. J., retired.

### ARMSTRONG, J.

Employer seeks review of an order of the Workers' Compensation Board that applied the last injurious exposure rule to assign responsibility to employer for claimant's occupational disease. We affirm.

Claimant began to experience a locking sensation in his right middle finger while employed by Willamette Industries in the 1980s. He also injured his back at Willamette and received treatment for that injury from a neurosurgeon, Dr. Newby. During a 1987 appointment for his back, claimant reported his finger problem to Newby. The doctor noted that problem in a report to Willamette:

> "[T]hree weeks ago [claimant] began to experience numbness in his hands, primarily at night, as well as with driving. He also noticed a catching sensation when he tries to extend his right middle finger. [B]elieve he is now having symptoms of carpal tunnel syndrome."

Newby referred claimant to another doctor to perform nerve-conduction studies to determine whether claimant suffered from carpal tunnel syndrome. Claimant later filed a claim for carpal tunnel syndrome, which was accepted by Willamette. Nothing further was done at that time about the reported finger condition.

In January 1994, claimant changed occupations and began work as an apprentice plumber. He initially worked for Advanced Plumbing. In February 1994, claimant went to work full time with Noe Plumbing. Claimant considered Noe to be his primary employer, but he also worked intermittently for Advanced. The condition of claimant's wrists and finger deteriorated while claimant worked for the two employers. He was diagnosed in June 1995 with a trigger finger condition in his right middle finger, and surgery for the condition was recommended at that time.[1] Throughout the remainder of 1995, claimant was examined and treated by a number of doctors, all of whom agreed that claimant had a trigger finger condition and that he needed surgery for it.

---

[1] Claimant also experienced problems with his wrist and a worsening of his carpal tunnel syndrome. Those conditions are not relevant to our review.

In December 1995, claimant went to work full time for MacMillan Plumbing. In May 1996, claimant had surgery for his trigger finger condition. He thereafter filed a claim for the condition, which all four employers denied.

After a hearing on the claim, an administrative law judge (ALJ) determined that claimant's trigger finger condition was work related and, hence, compensable. He further found that claimant had first sought medical treatment for the condition in 1987 while working for Willamette, thereby making Willamette the employer that was initially responsible for the condition. Based on a report by Dr. Button, a hand surgery specialist, the ALJ concluded that Willamette was able to shift responsibility for the condition to the three subsequent plumbing employers. In his report, Button had stated that claimant's plumbing employment was the major contributing cause of the worsening of claimant's trigger finger condition. The ALJ then determined that all of the plumbing employments were concurrent, so all three plumbing employers were jointly responsible for the condition.

On review, the Board agreed with the ALJ's determination that Willamette was initially responsible for claimant's condition. Relying on *SAIF v. Kelly*, 130 Or App 185, 188, 880 P2d 970 (1994), the Board reasoned that the dispositive date for assigning initial responsibility for the condition was the date that claimant first sought treatment for symptoms of it, even if the condition was not correctly diagnosed until later. The Board agreed with the ALJ that claimant had first sought treatment for symptoms of his trigger finger condition in 1987, while employed at Willamette.

The Board reached a different conclusion from the ALJ on responsibility. It disagreed with the ALJ's conclusion that the plumbing employments were concurrent and, thus, that all three plumbing employers were jointly responsible. The Board reasoned that, although the employments overlapped, they were not simultaneous, in that claimant began and ended his employment with each of the employers at different times. Thus, the Board concluded that the concurrent employment rationale did not apply. It instead applied the last injurious exposure rule to assign liability among the

three plumbing employers. Using that rule, the Board determined that responsibility for the condition would shift to the last plumbing employer, MacMillan.

■ On review, MacMillan argues that the Board erred in two respects. First, it contends that the Board erred in assigning initial responsibility to Willamette, and second, that it erred in shifting responsibility for claimant's condition to MacMillan. The last injurious exposure rule assigns initial responsibility for a claimant's occupational disease to the last employer for whom the claimant worked before the claimant became disabled by or sought treatment for the disease whose work conditions could have caused the disease. The Board found that claimant first sought treatment for his trigger finger condition in 1987 when he was employed by Willamette, which led the Board to assign initial responsibility for the condition to Willamette. MacMillan contends that the Board erred in doing that, because it did not also find that claimant's work at Willamette could have caused the condition to develop or worsen. We need not decide whether MacMillan is correct on that point, because the Board concluded on reconsideration that it would shift responsibility for the condition to MacMillan even if initial responsibility for the condition were assigned to Noe, the plumbing employer that MacMillan contends should have been assigned that responsibility. Hence, we turn to the last issue that MacMillan raises, which is whether the Board erred in shifting responsibility for claimant's condition to it.

■ Once initial responsibility for a condition is assigned, an employer may shift responsibility for the condition to a subsequent employer by establishing that the later employment contributed independently to the cause or worsening of it. *Timm v. Maley*, 125 Or App 396, 401, 865 P2d 1315 (1993), *rev den* 319 Or 81 (1994). The Board found on reconsideration that each of claimant's plumbing employments had actually contributed to a worsening of claimant's finger condition and, thus, that responsibility for the condition could shift to the last of them, MacMillan.

MacMillan attacks that finding on two grounds: first, that there is not substantial evidence to support it and, second, that it conflicts with the Board's finding that Noe,

rather than MacMillan, was the last of claimant's plumbing employers.[2] As to the first point, we conclude that there is substantial evidence to support the Board's finding that the work conditions at each plumbing employer contributed to a worsening of claimant's finger condition.

As to the second, the Board did recite employment dates in its discussion about concurrent employment that conflict with its express findings on the same issue and with its conclusion that MacMillan is the employer that is responsible for the condition. We do not believe, however, that that conflict causes the Board's opinion to lack substantial reason. The discussion about concurrent employment is distinct from the discussion about whether MacMillan is responsible for claimant's condition, and nothing suggests that the Board considered the dates that it recited in its discussion about concurrent employment to have any bearing on its decision about whether MacMillan is responsible for the condition because it was the last of claimant's plumbing employers. The Board's decision on the latter issue is consistent with its express findings about the dates of claimant's employment and with the evidence in the record. Consequently, the Board did not err in assigning responsibility for the condition to MacMillan.

Affirmed.

---

[2] MacMillan raises a third issue about the application of the last injurious exposure rule, but we conclude that it reduces to a contention that there is not substantial evidence to support a finding that claimant's employment at MacMillan worsened his trigger finger condition.