Argued and submitted July 1, 1999, reversed and remanded January 31, 2001

In the Matter of the Compensation of
Conrid J. Paxton, Claimant.

RLC INDUSTRIES,
*Petitioner,*

*v.*

SUN STUDS, INC./SAIF CORPORATION;
Woolley Enterprises/SAIF Corporation;
and Conrid Paxton, Aller & Morrison/SAIF Corporation,
*Respondents.*

(95-00537, 94-13809 and 94-10357; CA A103762)

16 P3d 1208

Charles E. Bolen argued the cause for petitioner. With him on the brief was Hornecker, Cowling, Hassen & Heysell.

William Blitz argued the cause and filed the brief for respondent Woolley Enterprises.

David L. Runner waived appearance for respondents SAIF Corporation and Sun Studs, Inc.

No appearance for respondents Conrid Paxton and Aller & Morrison.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

This case is before us on review for the second time. *See SAIF Corporation v. Paxton*, 154 Or App 259, 959 P2d 634 (1998). In the current proceeding, RLC Industries (RLC) seeks reversal of an order of the Workers' Compensation Board that assigned responsibility for claimant's hearing loss to it under the last injurious exposure rule. We reverse.

Claimant is a heavy equipment maintenance worker. He worked for Woolley Enterprises (Woolley) from 1977 to January 1981, for RLC from January 1981 to October 1991, and for Sun Studs, Inc. (Sun Studs) after 1991. Claimant's first hearing test, which was conducted for RLC on June 4, 1981, showed substantial hearing loss. Although claimant's subsequent hearing tests were somewhat inconsistent, the two doctors whose opinions the Board credited concluded that claimant's occupational hearing loss occurred before June 4, 1981. The Board nonetheless assigned responsibility for the entire hearing loss to Sun Studs under the last injurious exposure rule.

In our prior review, we held that the Board had erred in assigning responsibility to Sun Studs because the medical evidence showed that that employment could not have contributed to the hearing loss. On remand, the Board assigned responsibility to RLC, once again relying on the last injurious exposure rule. RLC argues on review that responsibility cannot be assigned to it because OAR 436-035-0250(2) allows an employer to absolve itself of responsibility for a hearing loss by documenting the loss within the first 180 days of a claimant's employment, and RLC documented claimant's loss within the first 180 days of his employment with RLC.[1] Although OAR 436-035-0250(2) concerns the rating of a hearing disability rather than the assignment of responsibility for it, and therefore is not strictly applicable to this case, *see* OAR 436-035-0003, we conclude that RLC has

---

[1] The rule deals with tests conducted within 180 days of assignment "to a high noise environment." OAR 436-035-0250(2). There is no dispute that claimant's employment with RLC involved employment in a high noise environment, so we will refer to the test as having been conducted within 180 days of claimant's employment with RLC.

proved that it could not have caused the loss. Responsibility for claimant's injuries therefore shifts to Woolley under the last injurious exposure rule.

■ ■　　When there is a dispute about which of several employers is responsible for an occupational disease or injury, the last injurious exposure rule "assigns initial responsibility for the claimant's occupational [condition] to the last employer for whom the claimant worked before the claimant became disabled by or sought treatment for the [condition] whose work conditions could have caused the [condition]." *MacMillan Plumbing v. Garber,* 163 Or App 165, 170, 986 P2d 1275 (1999). "The last insurer can transfer liability to a previous insurer by establishing that it was impossible for its employer to have caused the condition or that a prior period of employment was the sole cause of the condition." *Reynolds Metals v. Rogers,* 157 Or App 147, 153, 967 P2d 1251 (1998), *rev den* 328 Or 365 (1999) (citations omitted). Further, if the medical evidence is such that causation is easily apportioned among employers, we have held that the last injurious exposure rule does not apply: "[W]hen injuries are so distinct that it is possible to segregate them in terms of causation, responsibility for the injuries can and will be apportioned between or among the employers." *James River Corp. v. Green,* 164 Or App 649, 652-53, 993 P2d 157 (1999) (citations and internal quotation marks omitted).[2] That exception to the last injurious exposure rule accords with its dual purposes, which are administrative efficiency and precision in the assignment of responsibility. *See Runft v. SAIF,* 303 Or 493, 502, 739 P2d 12 (1987). Under the principles outlined above, we conclude that RLC has shown that it was impossible for it to have caused claimant's loss.

■　　Claimant had worked for RLC for about five months before his first hearing test revealed his injury. Thus, under the last injurious exposure rule, the liability for claimant's hearing loss falls on RLC unless it can prove that it was impossible for it to have caused the condition or that another employer was solely responsible for it. *See Reynolds Metals,*

---

[2] We also noted in *James River Corp.* that hearing loss is one of the conditions for which it often is possible to segregate injuries in terms of causation. *James River Corp.,* 164 Or App at 653.

157 Or App at 153. Here, the use of multiple audiograms allows RLC to prove that it could not have caused claimant's injury. Based on the audiograms, both of the doctors whose opinions the Board credited concluded that claimant's entire work-related hearing loss occurred before the June 4, 1981, hearing test conducted for RLC. RLC argues that, in conjunction with the medical evidence, OAR 436-035-0250(2)[3] establishes that claimant's hearing loss occurred before his employment with RLC, which began in January 1981.[4] We agree with RLC that, by absolving employers from the obligation to compensate claimants for preexisting losses that are documented within the first 180 days of employment, the rule indirectly establishes that RLC could not have caused claimant's hearing loss.

Although the rule was created for use in rating a claimant's disability, ignoring it in the responsibility context could lead to troubling results. For instance, claimant joined all three potentially responsible employers as parties at the outset of the case. If we were to ignore the principle of causation implicit in OAR 436-035-0250(2) and simply apply the last injurious exposure rule without reference to it, responsibility for claimant's hearing loss would fall on RLC. However, when RLC closed claimant's claim and calculated his disability award, the principle of causation in OAR 436-035-0250(2) apparently could allow RLC to offset 100 percent of claimant's hearing loss. Claimant would then be left with no compensation because both of the other potentially responsible employers, Woolley and Sun Studs, would already have been absolved of responsibility under the last injurious exposure rule. That result, which is precisely the type that the last injurious exposure rule was designed to prevent, see *Runft*, 303 Or at 502, militates against applying the rule without

---

[3] OAR 436-035-0250(2) provides that

"[c]ompensation may be given only for loss of normal hearing which results from an on-the-job injury or exposure. * * * [H]earing loss which existed before this injury or exposure will be offset against hearing loss in the claim, if adequately documented by a baseline audiogram obtained within 180 days of assignment to a high noise environment."

[4] Although OAR 436-035-0250 technically deals with rating a claimant's disability compensation, and therefore comes into play only after responsibility has been assigned, we have previously applied the rule to apportion responsibility. *See Green*, 164 Or App at 653.

reference to the methods by which disability awards are calculated. Accordingly, we reject that approach and apply the last injurious exposure rule in light of OAR 436-035-0250(2), which means that responsibility for claimant's loss shifts to Woolley.

Woolley argues that RLC is precluded from attempting to shift responsibility to it under ORS 656.308(2) (1990) because, when RLC initially disclaimed responsibility, it failed to list Woolley as a potentially responsible employer. Under the circumstances of this case, we reject Woolley's argument.

ORS 656.308(2) (1990) provided that

"[n]o employer or insurer shall be joined in any workers' compensation proceeding unless the worker has first filed a timely written claim for benefits against the employer or insurer * * *. Any employer or insurer which intends to disclaim responsibility for a given injury or disease claim on the basis of an injury or exposure with another employer or insurer shall mail a written notice to the worker as to this position within 30 days of actual knowledge of being named or joined in the claim. The notice shall specify which employer or insurer the disclaiming party believes is responsible for the injury or disease. The worker shall have 60 days from the date of mailing of the notice to file a claim with such other employer or insurer. Any employer or insurer against whom a claim is filed may assert, as a defense, that the actual responsibility lies with another employer or insurer, regardless of whether or not the worker has filed a claim against that other employer or insurer, if that notice was given as provided in this subsection."

RLC mailed two versions of the required written notice to claimant, both within 30 days. The first did not list any other employer or insurer as the responsible party; the second listed only Sun Studs.

Based on our decisions in *Gosda v. J. B. Hunt Transportation*, 155 Or App 120, 962 P2d 777 (1998), *Garibay v. Barrett Business Services*, 148 Or App 496, 941 P2d 1036 (1997), and *Farmers Ins. Group v. Huff*, 149 Or App 298, 942 P2d 853 (1997), Woolley argues that RLC's failure to name

Woolley in the disclaimer precludes RLC from arguing on appeal that Woolley is the responsible party. We disagree.

■ In *Garibay*, the employer sought to shift responsibility without having disclaimed responsibility at all. As a consequence of that failure, the claimant did not join the other potentially responsible employers. *Garibay*, 148 Or App at 500-01. The employer's utter lack of compliance with ORS 656.308(2) (1990) in *Garibay* and the claimant's resultant failure to join the other potentially responsible employers distinguish that case from this one. In *Gosda*, we applied the 1995 version of ORS 656.308(2) and merely discussed the circumstances of *Garibay* in our analysis. *Gosda*, 155 Or App at 124. Nothing that we said in *Gosda* broadens our holding in *Garibay*.

Finally, in *Farmers Ins. Croup*, one of two insurers had issued an untimely disclaimer. The claimant nonetheless joined both insurers in the proceeding, and the Board absolved from responsibility the insurer that had entered an untimely disclaimer and held the other insurer responsible. We affirmed, noting that the one insurer's untimely disclaimer did not bar the claimant from proving his case against the other insurer. *Farmers Ins. Group*, 149 Or App at 305-07. Although the Board in *Farmers Ins. Group* found that the claimant had elected to pursue his claim against the complying employer,[5] it specifically declined to require "that there be a special effort or preference exhibited by a claimant before there can be a finding that a claimant has 'actively pursued' a claim against a carrier." *Joseph R. Huff*, 48 Van Natta 731, 734 (1996). We affirmed the Board's determination that the claimant in *Farmers Ins. Group* had pursued a claim against the complying employer in spite of the fact that the claimant had done little more than join that employer in the proceeding.[6] *Farmers Ins. Group*, 149 Or at 306-07. This

---

[5] In this case, we use the adjectives "complying" and "noncomplying" to refer to the employer's compliance or lack of compliance with the requirements of ORS 656.308(2) (1990), rather than with the coverage requirements of the Workers' Compensation Law.

[6] The Board in *Farmers Ins. Group* pointed to only one piece of evidence, other than the claimant's joining the complying employer, that indicated that the claimant was actively pursuing a claim against the complying employer: the fact that the claimant's counsel replied in the affirmative when the ALJ asked whether the claimant was actively pursuing a claim against the complying employer. *Joseph R. Huff*, 48 Van Natta at 734.

case is similar to *Farmers Ins. Group* in that both of the relevant employers were parties from the beginning. This case is also similar to *Farmers Ins. Group* in that claimant, by joining Woolley, has elected to pursue his claim against it. In addition, like the claimant in *Farmers Ins. Group*, claimant has proven his claim against a complying employer, Woolley.

Our conclusion is bolstered by the purpose of the disclaimer requirement in ORS 656.308(2) (1990), which is to protect the claimant from being left without compensation if she fails to identify all of the potentially responsible employers. *See, e.g., Garibay*, 148 Or App at 501. It does that by denying the noncomplying employer a responsibility defense against the claimant, thereby allowing *the claimant* to recover against a noncomplying employer in the event that the other potentially responsible employers have not been joined. Here, because all of the potentially responsible employers were joined, there is no danger of claimant being left without a remedy from the responsible employer for a compensable claim. We conclude, therefore, that the Board erred in assigning responsibility to RLC under the last injurious exposure rule.

Reversed and remanded.